# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diana Morales, : 
                                         : 
               Petitioner : 
                                           : 
             v. : No. 110 C.D. 2017
                                           : Submitted: June 16, 2017
Workers' Compensation Appeal : 
Board (School District of Philadelphia), : 
                                           : 
               Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  August 30, 2017**

Diana Morales (Claimant) petitions for review of the December 29, 2016 order of the Workers' Compensation Appeal Board (Board) that affirmed a December 29, 2015 decision and order of a Workers' Compensation Judge (WCJ). Pursuant to the Workers' Compensation Act (Act),[1] the WCJ denied Claimant's Review Petition, Review Medical Treatment/Billing Petition, and Penalty Petition, and granted a Termination Petition filed by the School District of Philadelphia (Employer). The WCJ concluded that Claimant (i) failed to prove that the description of injury in the Notice of Compensation Payable (NCP) was incorrect or that her January 6, 2012 work-related injuries included anything other than a left

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

shoulder and cervical strain and sprain; and (ii) failed to prove that any medical bills for the accepted work injuries are unpaid. (WCJ Decision, Conclusions of Law (C.L.) ¶¶ 2-3.) The WCJ further found that Employer proved that Claimant had fully recovered from her work-related injuries as of August 11, 2014. (*Id.*, C.L. ¶ 5.) Claimant argues before this Court that the Board erred in affirming the WCJ's decision because the WCJ failed to issue a reasoned decision and failed to base her findings upon sufficient competent evidence. Claimant also argues that the Board erred by failing to rule properly on the issue of unpaid medical bills. For the following reasons, we affirm the order denying Claimant's Review Petition and the order granting Employer's Termination Petition. With regard to Claimant's Review Medical Treatment/Billing Petition and Penalty Petition, we remand with instruction to the WCJ to determine whether any bills received from Anthony S. Abdalla, D.C. are unpaid, and if so, whether such non-payment violates the Act such that a penalty should be imposed.[2]

Claimant, who was employed as a bus driver, suffered a work-related injury on January 6, 2012 while driving her route, when she was turning the wheel of the school bus. (WCJ Decision, Findings of Fact (F.F.) ¶1.) Employer issued a Notice of Temporary Compensation Payable (NTCP) accepting Claimant's injury as a "left shoulder, cervical sprain/strain;" the NTCP converted to a NCP, and on June 13, 2012, a Notice of Suspension was issued suspending Claimant's benefits as of June 5, 2012 based upon her return to work. (*Id.*, F.F. ¶¶ 1-2.) On March 21, 2014, Claimant filed a Review Petition alleging an incorrect description of injury;

---

[2] Our review is limited to determining whether there has been any error of law or violation of constitutional rights, and whether the WCJ's necessary findings of fact are supported by substantial evidence. *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 947 n.1 (Pa. Cmwlth. 2010).

a Review Medical Treatment and/or Billing Petition, alleging that medical bills are unpaid; and a Penalty Petition, alleging Employer violated the Act. On October 10, 2014, Employer filed a Termination Petition, alleging Claimant was fully recovered from her work injury as of August 11, 2014.[3] Hearings were held and evidence was submitted for both parties; on July 8, 2014, Claimant testified before the WCJ. (Hearing Transcript (H.T.), R.R. at 17a-50a.) Claimant also offered the deposition testimony of Sofia Lam, M.D., who is board-certified in physiology and anesthesiology, and who treated Claimant beginning in February 2014 with cervical epidural and facet joint injections and prescriptions for muscle relaxers, sleeping pills, and pain medication. (Lam Deposition, R.R. at 52a-89a; WCJ Decision, F.F. ¶¶ 4(a), 4(d).) Employer offered the deposition testimony of Gregory Tadduni, M.D., who is board-certified in orthopedic surgery and who performed an independent medical examination (IME) of Claimant. (Tadduni Deposition, R.R. at 122a-195a.)

Dr. Lam testified that her examination of Claimant showed decreased range of motion in the cervical spine; the findings that she considered objective included multiple areas of trigger point, reversal of the cervical lordosis caused by spasm, and a positive Mannkopt test.[4] (Lam Deposition, R.R. at 60a-61a.) Dr.

---

[3] Pennsylvania courts have determined that to succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability has ceased, or any remaining conditions are unrelated to the work injury. *Gillyard v. Workers' Compensation Appeal Board (Pa. Liquor Control Board)*, 865 A.2d 991, 995 (Pa. Cmwlth.) (*en banc*), *appeal denied*, 882 A.2d 1007 (Pa. 2005). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from her work-related injuries. *Id.*

[4] A Mannkopt test measures positive objective signs of pain, with the attachment of patient to a heart rate monitor to detect heart rate increases higher than five percent during examination of painful body parts. (Lam Deposition, R.R. at 61a.)

3

Lam acknowledged during her deposition that a February 2012 EMG report from an Aria Health physician who initially treated Claimant indicated no evidence of left-sided cervical radiculopathy or neuropathy. (Lam Deposition, R.R. at 78a.) Dr. Lam disagreed with the findings of Dr. Anderson, who also treated Claimant in 2012, and whose report indicated there were no acute cervical spine findings in a January 31, 2012 MRI. (*Id*., R.R. at 79a-81a.) Dr. Lam opined that the January 31, 2012 MRI reported a disc protrusion and tear at C5-5, which she opined was an acute finding that produced Claimant's radicular symptoms, and small disc bulges at C4-5 and C6-7 and significant facet joint hypertrophy and foraminal narrowing, which she opined are chronic and degenerative in nature. (Lam Deposition, R.R. at 66a; WCJ Decision, F.F. ¶ 4(c).) Dr. Lam also opined that the cervical disc rupture that Claimant suffered was caused by the January 6, 2012 work incident, as a result of a twisting motion in the lateral position, and as evidenced by the neck radiation down to her arm that Claimant described. (Lam Deposition, 67a-68a, 73a.) Dr. Lam recommended that Claimant request light duty, and opined that the fact that Claimant continued to work as a school bus driver decreased her response to treatment. (*Id*., R.R. at 72a.)

Dr. Tadduni testified that during the IME, Claimant complained of pain in her shoulder that radiates up to the side of her neck and her face on the left, stiffness in her left hand, and pain coming down the entire left arm and forearm. (Tadduni Deposition, R.R. at 130a-131a; WCJ Decision, F.F. ¶ 5(b).) Dr. Tadduni noted that Claimant was unable to specify whether the pain going down her arm was in radial or ulnar aspect or anterior or posterior; he stated that it would be expected that if it were a radicular symptom, she would be able to specify which part of the arm it was on. (Tadduni Deposition, R.R. at 131a; WCJ Decision, F.F.

4

¶ 5(c).) Dr. Tadduni further opined that radicular symptoms would not ever radiate up into the face because no cervical roots innervate the face; Claimant's symptoms also did not change with coughing or sneezing, but if Claimant's symptoms were coming from a disc herniation worse at night than during the day, as reported, they would be expected to change with coughing or sneezing. (*Id*.) Dr. Tadduni reported that Claimant had a full range of cervical motion with no symptoms, testing maneuvers for cervical radiculopathy and cervical cord compression were negative, spine curvature was normal, and upper extremity range of motion was full and symmetrical. (Tadduni Deposition, R.R. at 134a-135a; WCJ Decision, F.F. ¶ 5(d).) Dr. Tadduni stated that although Claimant would not allow impingement testing or internal rotation of her left shoulder, he noted that she had fully internally rotated her left shoulder during range of motion testing; he found no evidence of any ongoing injuries to the shoulder or neck, and no objective finding that substantiated any of her subjective complaints. (Tadduni Deposition, R.R. at 138a, 140a; WCJ Decision, F.F. ¶ 5(d).) Dr. Tadduni's opinion of the January 31, 2012 MRI study results differed from that of Dr. Lam; he indicated that the findings of bulging, foraminal narrowing and facet hypertrophy were chronic findings, which take years to develop, and they follow a disc abnormality, thus the disc abnormality is not an acute finding. (Tadduni Deposition, R.R. at 158a-159a.)

In her December 23, 2015 decision and order, the WCJ found that Claimant's testimony was not credible, noting a number of factors in support of this determination.[5] The WCJ found the opinion of Dr. Tadduni to be more

---

[5] The WCJ stated:

5

credible and persuasive than that of Dr. Lam, noting a number of factors in support of that determination.[6] In concluding that Claimant failed to prove that the description of injury in the NCP was incorrect or that her January 2012 work injuries included anything other than a left shoulder and cervical sprain and strain, the WCJ rejected Dr. Lam's diagnosis as "left shoulder pathology, left and right cervical strain and sprain, aggravation of cervical degenerative disease, cervical

> Claimant testified that she did not have pain in her left arm before January 2012, but admitted that when she treated at Industrial Health for left shoulder, neck, and chest pain, she told them she had similar problems in 2001 when she slipped and fell [o]n her back on ice; Claimant told Dr. Tadduni she had no injuries before January 6, 2012 and no prior symptoms in her neck or shoulder, but his review of her medical records indicated that she gave Dr. Anderson a history of chronic widespread left-sided body pain following a fall approximately five years earlier and gave Dr. Taniguchi and/or Dr. Schnall a history of a previous fall in 2006 or 2008 "and since then having had pain in her neck and left shoulder" and "left-sided neck pain radiating to the left arm"…Claimant exhibited a number of non-anatomic or embellished complaints at the time of the independent medical examination.

(WCJ Decision, F.F. ¶ 7.)

[6] The WCJ stated:

> Dr. Tadduni is board certified in orthopedic surgery while Dr. Lam is board-certified in physiology and anesthesiology; Dr. Tadduni performed a thorough physical examination which resulted in multiple non-anatomic findings and complaints and no objective findings to support Claimant's subjective complaints; Dr. Tadduni's opinions are supported by the EMG studies which show no evidence of cervical radiculopathy; Claimant's medical records indicate a history of prior instances of the same type of complaints.

(WCJ Decision, F.F. ¶ 8.)

6

fracture disc rupture, and cervical radiculopathy on the left." (Lam Deposition, R.R. at 64a.) The WCJ accepted the opinion of Dr. Tadduni that, to the extent that shoulder and cervical strain and sprain were accepted work injuries, Claimant was fully recovered.[7] With regard to the claim that medical bills were unpaid, the WCJ found that at the final hearing, counsel for Claimant was granted ten days to submit into evidence medical bills from Dr. Abdalla, a chiropractor who provided physical therapy and referred Claimant to Dr. Lam, but these bills were not submitted within the allotted time period; the WCJ concluded that Claimant failed to prove that any bills were unpaid and therefore did not establish that Employer violated the Act. (WCJ Decision, F.F. ¶ 6, C.L. ¶¶ 3-4.)

Claimant appealed the WCJ's decision, and the Board issued an opinion and order on December 29, 2016 affirming the WCJ. (Board's Opinion and Order (Board Op.) at 11.) In its decision, the Board reviewed Dr. Lam's testimony and noted that Dr. Lam had acknowledged that she was not an orthopedic specialist and could not therefore evaluate Claimant's shoulder injury; the treatment she provided was mainly to the neck area. (Board Op. at 5; Lam Deposition, R.R. at 83a.) In its review of the opinions offered by Dr. Tadduni, the Board noted his opinion that the MRI showed chronic changes to Claimant's cervical spine, but no acute changes. The Board stated:

> After the IME, Dr. Tadduni reviewed Claimant's medical records and diagnostic studies and issued a September 3, 2014 report indicating the records supported his opinions

---

[7] Indeed, the WCJ noted that Dr. Tadduni opined that he does not believe that a neck injury occurred, since nothing in Claimant's history goes along with a cervical injury and it is not reasonable that turning the wheel of the school bus could cause a neck injury. (WCJ Decision, F.F. ¶ 5(e).)

7

in his IME report, when he had no records. Dr. Tadduni also recently reviewed additional reports prior to the deposition which showed a history of an injury approximately five year[s] before 2012…[Dr. Tadduni] disagrees Claimant has radiculopathy, as uncovertebral and facet hypertrophy, as seen on the MRI, take years to develop. That would be consistent with the report Claimant made of a fall in 2008. Dr. Tadduni noted a sprain or strain typically lasts six to twelve weeks.

(Board Opinion, R.R. at 242a-243a.)

Before this Court, Claimant argues that the Board's decision was not reasoned,[8] in that it failed to address her argument that Employer's expert, Dr. Tadduni, was not competent; Claimant challenges the competency of Employer's expert because he testified that Claimant suffered no injury to her neck in the work incident, but the NCP accepted an injury described as "left shoulder, cervical sprain/strain." (Notice of Temporary Compensation Payable, R.R. at 1a.) We do not agree. The WCJ noted Dr. Tadduni's belief that no neck injury occurred; however, she further found that it was Dr. Tadduni's opinion that, to the extent that shoulder and cervical strain and sprain were accepted work injuries, Claimant was fully recovered. The Board acknowledged Dr. Tadduni's opinion that there was nothing in Claimant's history that would indicate a cervical injury on January 6, 2012, but further weighed Dr. Tadduni's conclusion that at the time he performed the IME, he believed that Claimant had fully recovered from the injury accepted in the NCP.

---

[8] Section 422(a) of the Act, 77 P.S. §834, requires that the WCJ render a reasoned decision containing findings of fact and conclusions of law, based upon the record as a whole, that clearly and concisely state and explain the rationale for the decision, and when faced with conflicting evidence, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1046 (Pa. 2003).

8

In *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213 (Pa. Cmwlth. 2008), a medical expert's testimony was found inadequate to support a termination of benefits where the expert testified that the claimant did not sustain the recognized injury, and also failed to testify that the claimant was fully recovered or no longer exhibited findings consistent with the recognized injury. *Id.* at 218-19. In *Westmoreland*, our Court distinguished our decisions in both *Jackson v. Workers' Compensation Appeal Board (Resources for Human Development)*, 877 A.2d 498 (Pa. Cmwlth. 2005), and *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222 (Pa. Cmwlth. 2003), noting that in *To*, the employer's doctor was not incompetent where he opined that he was unable to see how the work injury could possibly happen, but further opined that there was no evidence of medical impairment and claimant made a full recovery from any injury sustained on the date of the work incident. 819 A.2d at 1225. In *Jackson*, the employer's doctor did not acknowledge that the claimant suffered a disabling knee injury, but went on to opine, in the alternative and based on the assumption that the injury in fact occurred, that the injury had resolved, and the Court found his testimony competent to support a termination of benefits. 877 A.2d at 503. Here, it is not necessary for Dr. Tadduni to believe that Claimant sustained a cervical injury, so long as he bases his opinion regarding recovery on the question of whether or not the accepted injury continues to disable Claimant. *See Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734, 741 (Pa. Cmwlth. 2010). As stated by the Board, Dr. Tadduni addressed the accepted injury and opined that she was fully recovered from such injury; as such, his opinion was clearly competent and sufficient to support a termination of benefits.

Claimant further contends that the WCJ erred in finding her not credible, asserting that there is no evidence of record to support this finding. She also argues that the WCJ erred in finding Dr. Lam less credible than Dr. Tadduni. We find no merit in either argument. Here, the WCJ clearly set forth her reasons both for finding Claimant's testimony not credible, and for accepting the opinion of Dr. Tadduni over that of Dr. Lam. The WCJ is free to accept or reject all or a portion of the testimony of any witness, lay or medical, and is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight in workers' compensation proceedings. *Daniels*, 828 A.2d at 1052; *SCI-Waymart v. Workers' Compensation Appeal Board (Feldman)*, 766 A.2d 900, 902 (Pa. Cmwlth. 2000). Accordingly, we hold that the WCJ rendered a reasoned decision and that the testimony offered by Employer's medical expert is legally sufficient to support the denial of Claimant's Review Petition and the granting of Employer's Termination Petition.

Finally, Claimant argues that the WCJ failed to consider the submitted evidence of billing, and failed to order that all properly submitted billings up to the date of termination were payable by Employer in accordance with the Act. The certified record includes the transcript from a final WCJ hearing on March 19, 2015, held for the purpose of closing the record; at the hearing, the WCJ enumerated the various exhibits submitted by the parties and stated: "C-5 will be medical bills of Dr. Abdalla, which are to be supplied both to myself and to Counsel within ten days." (3/19/15 WCJ Hearing Transcript at 6.) The transcript contains, in parentheses, the words "Claimant's Exhibit Five marked for identification." (*Id*.) The WCJ then states: "[i]f Counsel for the Employer has any objections, she will notify both me and the Claimant's Counsel in writing." (*Id*.)

10

The WCJ then confirms with counsel that there are no further submissions to the record, and sets the date for submission of briefs. In her decision, the WCJ stated that "[a]t the last hearing, counsel for Claimant was granted ten days to submit into evidence bills from Dr. Abdalla, but they were not submitted within the allotted time period." (WCJ Decision, F.F. ¶ 6.)

Claimant averred in her reasons for filing an appeal to the Board that "evidence of unpaid bills was submitted." (On-Line Appeal, R.R. at 231a.) In its opinion, the Board noted that "Claimant submitted a packet of Health Insurance Claim Forms (Exhibit C-5)." (Board Op. at 6.) The Board cited Section 306(f.1)(2) of the Act, pursuant to which providers are required to file periodic reports with the employer on a form prescribed by the Department of Labor & Industry, within a specified time period, and provides that an employer shall not be liable to pay for such treatment until the report is filed. 77 P.S. § 531(2). The Board further cited the regulations that deal with the forms to be used in submitting those bills.[9] The Board acknowledged that "[i]n Exhibit C-5, Claimant submitted several pages of Form 1500, showing dates of treatment, amounts billed, and procedure codes." (Board Op. at 10.) However, the Board opined, "Claimant submitted nothing to show the requirements of the Act were met, that [Employer]

---

[9] Department regulation 127.201 states:

> Medical bills – standard forms
> (a) Requests for payment of medical bills shall be made either on the HCFA [Health Care Financing Administration] Form 1500 or the UB92 Form (HCFA Form 1450), or any successor forms, required by HCFA for submission of Medicare claims. If HCFA accepts a form for submission of Medicare claims by a certain provider, that form shall be acceptable for billing under the act.

34 Pa. Code § 127.201.

had refused to make payment of the bills, or if they had not been paid, the reason why [Employer] did not pay." (*Id.*) In her brief, Claimant contends that neither Dr. Lam's nor Dr. Abdalla's bills have been paid, and further that Employer issued denials alleging the treatment to the accepted areas of Claimant's anatomy were unrelated to the accepted injuries.[10] (Claimant's Brief at 6.) Nothing in the certified record supports this assertion. The record contains Employer's Answer to Claimant's Review Medical Treatment/Billing Petition, which includes simply a denial that any medical bills related to the treatment of Claimant's work injury are unpaid. (Answer to Petitions, R.R. at 14a.) Exhibit C-5 consists of fourteen separate 1500 Health Insurance Claim Forms, all for services provided by Dr. Abdalla at Tacony Chiropractic & Rehabilitation during the period from June 8, 2013 through August 12, 2013; each claim form is dated August 26, 2013. Employer's brief does not address this argument, stating only that the WCJ's decision, as affirmed by the Board, to deny Claimant's billing petition was correct. Although the medical bills included in the record as Exhibit C-5 appear to comply with the Act's requirements, the WCJ indicated that they were not submitted within the allotted time period. Because this evidence is contained in the record, and it is unclear at what point it became part of the record, we conclude that further proceedings before the WCJ are warranted.

We discern no error in the Board's decision to affirm the denial of Claimant's Review Petition and to affirm the granting of Employer's Termination Petition. However, we remand to the Board, with instructions to remand to the WCJ to determine when evidence of medical billing included in Exhibit C-5 was

---

[10] At the WCJ hearing held on July 8, 2014, Claimant was questioned as to whether she was receiving bills for medical services provided by either Dr. Lam or Dr. Abdalla; she responded that workers' compensation benefits were paying for these services. (H.T., R.R. at 30a.)

received, whether such billing was properly submitted and unpaid and if so, whether Claimant's Review Medical Treatment/Billing Petition and Penalty Petition should be granted.

_____
**JAMES GARDNER COLINS, Senior Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diana Morales,                   :
                                      :

           Petitioner             :
                                      :

            v.                   :  No. 110 C.D. 2017
                                      :

Workers' Compensation Appeal    :
Board (School District of Philadelphia), :
                                      :

           Respondent        :

## O R D E R

AND NOW this 30th day of August, 2017, the order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED insofar as it affirmed the denial of the Review Petition filed by Diana Morales and AFFIRMED insofar as it affirmed the grant of the Termination Petition filed by the School District of Philadelphia. The order of the Workers' Compensation Appeal Board in the above-captioned matter is VACATED insofar as it affirmed the denial of the Review Medical Treatment/Billing Petition and Penalty Petition filed by Diana Morales. This matter is REMANDED to the Board, with specific instruction to remand to the Workers' Compensation Judge for further findings as described above. JURISDICTION RELINQUISHED.

 

_____
**JAMES GARDNER COLINS, Senior Judge**