Shelby JACKSON, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (RESOURCES FOR HUMAN DEVELOPMENT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 8, 2005.
Decided May 27, 2005.
Reargument Denied July 27, 2005.

Richard A. Jaffe, Philadelphia, for petitioner.

William Corkery, Blue Bell, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge McGINLEY.

Shelby Jackson (Claimant) petitions for review from the order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of the Workers' Compensation Judge (WCJ) to grant Resource for Human Development's (Employer) Petition for Termination.

Claimant worked as an Administrative Assistant for Employer's Children Out-

reach Services. On July 6, 2001, Claimant sustained a work-related injury when she tripped over a loose carpet at work and landed on all fours. The panel physician initially diagnosed Claimant with lumbosacral sprain and strain, a contusion of the elbow, and a contusion of the knee. Claimant filed a claim petition on July 31, 2001, which was granted, with a Stipulation of Fact, entered into by all parties. The Stipulation of Fact, as adopted by the WCJ, provides, in part:

2. It is agreed and stipulated that on July 6, 2001, the Claimant sustained a compensable work-related injury to her **knees, back and arms** in the course and scope of her employment. (Emphasis added).

3. At the time of petitioner's [Claimant's] injury, her average weekly wage was $435.00, entitling her to a workers' compensation rate of $322.00 per week.

4. Defendant [Employer] agrees that Claimant is entitled to temporary total disability benefits as a result of the July 6, 2001 work-related injury.

Stipulation, January 12, 2002, Paragraphs 2–4 at 1.

On August 26, 2002, Employer filed a Petition for Termination and asserted that Claimant had fully recovered from her work injury as of August 7, 2002, based on the opinions of Menachem Meller, M.D., (Dr. Meller) and an Affidavit of Full recovery executed by Dr. Meller. A hearing was held before the WCJ.

Employer introduced the deposition of Dr. Meller, a board-certified orthopedic surgeon. Dr. Meller reviewed the medical records and report of Dr. Greene. Dr. Meller examined Claimant on August 2, 2002. Dr. Meller initially noted that Claimant was deconditioned and overweight. She was five foot seven inches tall and weighed two-hundred ten pounds. Deposition of Menachem Meller, M.D.

February 13, 2003, (Dr. Meller Deposition), at 11. Claimant had normal curvatures in her neck and upper and lower back without any spinal deformity. She had no paravertebral muscle spasm or tenderness. Dr. Meller Deposition at 12. She reported that she did not have any spasm. There was no evidence of any acute soft tissue trauma. Motor strength was normal. In forward flexion, Claimant could bend and touch the bottom of her legs with her fingertips, which was normal given her "very large" size. She was able to get on and off the examination table without any obvious signs of difficulty. Dr. Meller Deposition at 13.

With regard to her lower extremities, Claimant had equal leg lengths, and no evidence of atrophy or swelling. She had a neutral knee alignment which meant that she was not knock-kneed or bow legged. Her deep tendon knee reflexes were symmetric and normal. There was "mild crepitus of patellofemoral motion bilaterally consistent with chondromalacia" and she had "some creaking of the knee caps" which Dr. Meller opined was normal for her age. There was "no warmth, no swelling or sinovitis, no meniscal signs, [and] normal stability in all planes." Dr. Meller Deposition at 14–15.

Dr. Meller further testified that Claimant filled out a patient form at his office in which she indicated that her injuries were to her hip and knees. Dr. Meller Deposition at 9. Claimant also indicated she took Tylenol PM two days before her IME, but had not taken any prescription pain medications in over a month. Dr. Meller Deposition at 20, 37. Dr. Meller noted the absence of any significant treatment or diagnostic workup other than a bone scan. Dr. Meller Deposition at 20. He also noted that Claimant had "significant pain behaviors" although "nothing [was] objectively wrong." N.T. at 11–12.

Dr. Meller agreed that the panel physician initially diagnosed Claimant with "sprains and strains lumbosacral, sprains . . . contusion on the elbow, contusion of the knee." Dr. Meller Deposition at 31. Dr. Meller concluded that Claimant suffered a "very mild subliming soft tissue injury such as a cervical lumbosacral strain and sprain." Dr. Meller Deposition at 21.

Specifically, with regard to the knee injury, Dr. Meller noted that the panel physician's records initially revealed a mild bilateral knee contusion. Dr. Meller Deposition at 19. Dr. Meller opined that "if [Claimant] had a knee injury, it would have been a contusion. She had no complaints, no findings and no ongoing treatment to the knees. If there was an injury, it resolved." Dr. Meller Deposition at 21. Dr. Meller did not perform any examination of Claimant's arms. Dr. Meller Deposition at 38.

Claimant presented the deposition testimony of her treating physician, Ronald Greene, M.D. (Dr. Greene). Dr. Greene initially examined Claimant on December 13, 2001. Claimant related that she tripped and fell forward sustaining injuries to her lower back and from her hips down to her knees. Deposition of Ronald Greene, M.D., May 6, 2003, (Dr. Greene Deposition), at 8.[1] Dr. Greene's examination revealed mild restricted range of motion in the low back and hips. Her neurological exam was normal. Her x-rays showed degeneration in the lumbosacral area at L5–S1 and S1–S2 and mild degenerative joint disease in the hips. Dr. Green Deposition at 9–10. Dr. Greene treated Claimant eight times. He ordered a Functional Capacity Examination (FCE) which was performed on August 16, 2002. Based on the FCE, physical examinations,

and review of x-rays and medical records, Dr. Greene concluded that Claimant had chronic lumbosacral strain with aggravation of underlying degenerative disc and facet disease as a result of the July 6, 2001, work-related accident. Dr. Green Deposition at 23. Dr. Greene testified that there was **"really nothing the matter with [Claimant's] knees" and he did not find an "arm injury."** Dr. Greene Deposition at 45. (emphasis added).

Claimant testified that she was an administrative assistant and training coordinator. Notes of Testimony, July 15, 2003, (N.T.) at 4. Her job duties included sitting at a desk six hours a day. N.T. at 6. She occasionally prepared training packets for new hires which involved compiling and carrying up to fifteen 250 page training packets at a time. N.T. at 5. Claimant testified that she did not feel capable of going back to her job and that her current physical complaints involved her "back, and [her] hip, [her] knees." N.T. at 12.

The WCJ granted the Termination Petition and made the following findings of fact:

8. This Judge has reviewed all the evidence. The evidence shows that the Claimant only suffered from lumbar sprain and strain from her work injury. There were no neurologic deficits or symptoms. I therefore accept the opinions of Dr. Meller as credible and persuasive. Dr. Meller performed a comprehensive medical examination. His examination indicated that there were no objective findings to support a continuing work injury. Dr. Greene's examinations were similar to Dr. Meller on most occasions. There is no objective evidence of a continuing work-related

---

1. There was no Reproduced Record filed in this case. Therefore, we will cite directly to the hearing and deposition transcripts.

disability. Therefore, to the extent that Dr. Greene's opinions differ from Dr. Meller's examination, Dr. Greene's opinions are rejected.

9. This judge reviewed the testimony of the Claimant and rejects her claim as not credible of a continued work-related disability. Claimant was an administrative assistant and sat down most of the day ... She has a sedentary lifestyle and her job as an administrative assistant is a sedentary job.

10. The evidence shows and I find that the Claimant fully recovered from her July 6, 2001, work injury as of August 6, 2002.

WCJ Decision, October 31, 2003, Findings of Fact (F.F.) Nos. 8–10 at 3.

The Board affirmed.

On appeal[2], Claimant asserts that the WCJ erroneously terminated her benefits based on Dr. Meller's testimony. Specifically, in her first and second issues, Claimant contends that Dr. Meller failed to acknowledge the previously established injuries to her **knees** and **arms** and he did not testify that she fully recovered from those injuries. Claimant also asserts that Dr. Meller failed to *examine* her **arms;** therefore, his testimony did not support the termination of her benefits. In her third and fourth issues, Claimant asserts that the WCJ erred because he failed to issue a reasoned decision and declined to award unreasonable contest attorney fees.

This Court will address Claimant's first and second issues collectively.

■ To succeed in a termination petition, the employer bears the burden of proving that the claimant's disability has ceased or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Compensation Appeal Board (J.C. Penney Co.)*, 747 A.2d 430 (Pa.Cmwlth.), *appeal denied,* 564 Pa. 718, 764 A.2d 1074 (2000). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from his work-related injuries. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.),* 141 Pa.Cmwlth.253, 595 A.2d 697 (1991).

■ In this case, Claimant challenges the sufficiency of Dr. Meller's testimony to support the Termination Petition. First, Claimant challenges the portion of Dr. Meller's testimony wherein he stated that he did not believe that Claimant suffered anything more than a contusion (a bruise) to her knee from the fall, and **"if"** there was an injury to her knee it resolved. Dr. Meller Deposition at 21. Claimant maintains that since Dr. Meller's opinion was based upon an assumption that was contrary to the parties' Stipulation that Claimant **had in fact** sustained a knee injury, his opinion was worthless.

In *To v. Workers' Compensation Appeal Board (Insaco, Inc.),* 819 A.2d 1222 (Pa. Cmwlth.2003), this Court held that the testimony of the employer's medical expert was sufficient to support a termination of benefits, notwithstanding the doctor's expressed belief that the claimant never sustained the injury acknowledged in the NCP. The doctor testified that the claimant had a normal physiologic examination, there was no evidence of a medical impairment and the claimant magnified his symptoms. The expert, however, went on to opine, that in any event, the claimant "had

**2.** This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board, (Penn Installation),* 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

made a full and complete recovery from **any injury he may have sustained** in the course of his employment." *To*, 819 A.2d at 1225 (emphasis added).

In this case, the opinion of Dr. Meller was analogous to the doctor's opinion in *To*. Based on the fact that Claimant "had no complaints" there were "no findings" and "no ongoing treatment to the knees," Dr. Meller did not state that Claimant suffered a disabling knee injury. However, Dr. Meller specifically went on to opine, in the alternative and based on the assumption that she had suffered a knee injury, that "it resolved." N.T. at 21. Thus, as in *To*, Dr. Meller's opinion did consider the "established facts," and he opined, based on those facts, that Claimant fully recovered from the bruised knee she had sustained one year earlier.

The WCJ, in his role as the ultimate fact finder and arbiter of credibility, accepted Dr. Meller's testimony as credible. The testimony of Dr. Meller supported the WCJ's conclusion that as of August 6, 2002, Claimant fully recovered from her bruised knee.

■ Next, Claimant asserts that the evidence was not sufficient to support the termination of benefits because Dr. Meller failed to examine her arms or address the "established" arm injury. *Central Park Lodge v. Workers' Compensation Appeal Board (Robinson)*, 718 A.2d 368 (Pa. Cmwlth.1998).

In *Central Park Lodge*, Alice Robinson (Robinson) was injured at work when a metal gate fell on her head. It was conclusively established in the claim petition proceeding that Robinson was disabled due to work-related injuries to her neck, back, and head, and the head injuries involved a concussion and post-concussion syndrome. Central Park Lodge's expert testimony only addressed claimant's neck and back injuries and failed to address Robinson's head injury (i.e., her concussion and post-concussion syndrome). On those facts, this Court affirmed the board's decision that Central Park Lodge's petition to terminate was not supported by sufficient evidence.

■ In this case, however, the evidence was sufficient for the WCJ to find that Claimant recovered from all of her work related injuries, including the bruised elbow. Claimant's own treating physician testified that he did not find an arm injury. Dr. Greene's testimony that Claimant had no arm injury was not contradicted by Dr. Meller. To that extent, it was accepted by the WCJ as credible.[3] Further, Claimant testified at the hearing before the WCJ that her only current complaints were her back, hip and knees. In essence, she conceded she did not continue to suffer from the bruised elbow, i.e., she recovered. Accordingly, there was nothing for the Employer to prove or establish in this regard.

From our review of the record, and based on the unique facts of this case, which include the uncontradicted and accepted testimony of Dr. Greene and Claimant's admission that her current complaints were her back, hip and knees, this Court concludes that Dr. Meller's failure to examine Claimant's arms and comment on the recovery of her bruised elbow was harmless error.

---

**3.** Unlike in *Lee v. Workers' Compensation Appeal Board (Keystone Insurance Company)*, 733 A.2d 659 (Pa.Cmwlth.1999), relied on by Claimant, Dr. Greene's testimony was only rejected by the WCJ "to the extent that Dr. Greene's opinions differ from Dr. Meller's examination." WCJ Decision, October 31, 2003, F.F. No. 8 at 3.

Finally, Claimant contends that the second WCJ failed to issue a reasoned decision. This Court does not agree.

The WCJ is only required to set forth the reasons for making the findings and is only required to make those findings necessary to resolve the issues that were raised by the evidence and which are relevant to resolve the issues that were raised by the evidence and which are relevant to making the decision. *Montgomery Tank Lines v. Workers' Compensation Appeal Board (Humphries)*, 792 A.2d 6, 13, n. 10 (Pa.Cmwlth.2002).

In this case, the WCJ summarized the testimony of the witnesses, noted which witnesses he found credible, and adequately explained that reasons for his credibility determinations. As such, the WCJ provided an adequate explanation for his determination and ultimate disposition of the Termination Petition. No error was committed.[4]

Accordingly, the Board is affirmed.

### ORDER

AND NOW, this 27th day of May, 2005, the order of the Workers' Compensation Appeal Board in the above-captioned Appeal is hereby affirmed.

---

4. In light of this Court's disposition of the first two issues in favor of Employer, Claimant's remaining issue regarding unreasonable contest fees need not be addressed.