# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gina DeBellis,                                          :
                              Petitioner               :
                                                       :
          v.                                           :    No. 1358 C.D. 2018
                                                       :    Submitted: March 1, 2019
Workers' Compensation Appeal                           :
Board (Dermatology, LTD),                              :
                              Respondent               :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                          **FILED: June 5, 2019**

## I. Introduction

Gina DeBellis (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming an order of a Workers' Compensation Judge (WCJ) denying and dismissing her petition to review compensation benefits (review petition) and her petition for penalties (penalty petition). The WCJ also granted Dermatology, LTD's (Employer) petition to terminate compensation benefits (termination petition).

As to the termination petition, Claimant contends the WCJ applied an erroneous burden of proof and capriciously disregarded substantial, competent evidence. As to the review and penalty petitions, Claimant alleges the WCJ disregarded proof that Employer's workers' compensation insurer, Selective Way Insurance Company (Insurer), willfully concealed discoverable documents

regarding additional injuries Claimant sustained. Claimant also argues the WCJ abused her discretion and violated Claimant's rights by ruling, off the record, that Claimant was not permitted to depose Insurer's claims adjuster to ascertain the full extent of the records and evidence Insurer allegedly concealed. In addition, Claimant contends the WCJ and the Board failed to recognize Insurer's duty to correct the description of the injury when its claims adjuster possessed unambiguous evidence from Employer's medical experts indicating the description of injury was wrong.

Further, based on the above contentions, Claimant argues the WCJ's credibility determinations were based on a tainted evidentiary record. Therefore, Claimant asserts the WCJ's credibility determinations are unsupported by the record. For the reasons that follow, we affirm the order of the Board.

## II. Background
### A. Petitions

Claimant worked for Employer as a receptionist. In February 2013, Claimant's foot became tangled in a computer wire and she tripped and fell. Claimant complained of injuries to her chin, low back, hips and knees. Shortly thereafter, Employer issued a medical-only notice of temporary compensation payable (NTCP) describing the injuries as right knee, right ankle, chin and left side contusions. In May 2013, Employer issued an amended/corrected NTCP describing the injury as a right-knee tear. The amended NTCP also provided for indemnity benefits. In May 2014, the parties entered into a supplemental agreement suspending Claimant's indemnity benefits as of May 1, 2014. In December 2015, the parties

2

entered into a new supplemental agreement reinstating Claimant's indemnity benefits effective October 22, 2015.

In November 2016, Employer filed a termination petition alleging Claimant fully recovered from her work injury as of August 17, 2016. Employer alleged Claimant could return to work without restrictions as of that date.

At the same time, Claimant filed a review petition seeking to expand the description of the injury to include lumbar strain and sprain with an aggravation of lumbar degenerative joint disease, lumbar disc herniations, lumbar radiculopathy, bilateral hip strain and sprain, and bilateral knee contusions, strains and sprains with post traumatic chondromalacia of the patella. Employer denied Claimant's averments.

Claimant also filed a penalty petition alleging Employer violated the terms of the Workers' Compensation Act[1] (Act) by intentionally limiting the description of Claimant's work injuries to avoid liability. Claimant further alleged Employer did not pay her medical bills. Employer denied Claimant's allegations.

**B. Evidence Presented**

Before the WCJ, Claimant testified regarding her work injury and medical treatment. Claimant sustained her work injury when her feet became tangled in computer wires and she fell face forward, injuring her chin, low back, hips and knees. In April 2013, Claimant underwent right-knee surgery. She also had

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2710.

cortisone injections in her left hip and both knees, and a nerve block injection in her low back. Claimant underwent a second right-knee surgery in April 2014.

Several weeks later, Claimant returned to work. However, Claimant continued to experience pain throughout her low back, hips and knees. In October 2015, Claimant left work because of extreme pain. Claimant testified she could not return to her pre-injury position because of extreme pain. More specifically, she could not sit, stand or bend as required as a result of extreme pain in her low back, hips and knees.

In support of her petitions, Claimant submitted expert medical testimony from Dr. William Murphy (Claimant's Physiatrist), a physician board-certified in physical medicine and rehabilitation. Claimant's Physiatrist first examined Claimant in May 2015. At that time, Claimant's complaints included low back pain, pain in both hips and both knees, and radiating pain, tingling and numbness into the lower extremities. Claimant's Physiatrist's physical examination of Claimant revealed restricted range of motion in the lower back, painful range of motion in the hips, positive clinical tests for lumbar radiculopathy, restricted motion of the knees, a positive patellar grind test, crepitus in the knees, tenderness to palpation over the cervical, lumbar and paraspinal muscles and sciatic notches, and tenderness over the greater trochanteric bursae.

Claimant's Physiatrist diagnosed Claimant with chin and facial contusions, lumbosacral sprain and strain with aggravation of lumbar degenerative joint and disc disease, clinical evidence of lumbar radiculopathy, bilateral hip strains

4

and sprains with post-traumatic greater trochanteric bursitis, bilateral knee contusions, sprain and strain with chondromalacia patella, and a right-knee injury with internal derangement, status post-surgery for a meniscal tear and for chondroplasty of the right knee. Claimant's Physiatrist further testified that a June 2015 electromyogram (EMG) identified L3, L4 and L5 nerve root irritation, which was primarily chronic.

Claimant's Physiatrist opined that Claimant's diagnoses were causally related to her February 2013 work injury. Claimant's Physiatrist based his opinion on the history Claimant provided, the abnormalities present on physical examination, the EMG and radiologic studies, and his review of the records from Claimant's other treating providers. On cross-examination, Claimant's Physiatrist acknowledged that any chin or facial contusions Claimant suffered as a result of the work injury resolved.

In support of its termination petition, Employer submitted expert medical testimony from Dr. Jeffrey Malumed (IME Physician), a board-certified orthopedic surgeon who performed independent medical examinations (IMEs) of Claimant in November 2015 and August 2016. Regarding Claimant's right-knee injury, IME Physician testified Claimant's April 2013 surgery revealed a stable meniscus tear and a little arthritis. Claimant's June 2014 MRI of her right knee came back normal with no meniscal or ligament tears. Claimant's second knee surgery revealed only some small arthritic changes.

Claimant returned to work after the second surgery. However, Claimant stopped working about two weeks prior to IME Physician's first examination in early November 2015. IME Physician testified that Claimant's right-knee examination was essentially normal except for some chondromalacia, which Claimant's Physiatrist described as normal for Claimant's age and size. Claimant had excellent range of motion in both hips and a normal low back examination, except for subjective complaints of pain. Ultimately, IME Physician opined that at the time of his November 2015 examination, Claimant's back complaints were not related to her work injury and that she fully recovered from her right-knee injury.

IME Physician again examined Claimant in August 2016. He testified Claimant indicated she did not have any right-knee treatment for a year and that she did not need any further treatment for her right knee. IME Physician further testified that Claimant had two normal MRIs of the left knee, and that if Claimant had a left-knee injury, she fully recovered from it.

In addition, IME Physician testified Claimant's back problems were not related to her work injury. Therefore, any treatment of Claimant's back condition would be solely related to her long-standing arthritic condition. In addition, IME Physician testified Claimant suffered from some non-work-related hip dysplasia, which is a congenital condition. He also stated that Claimant suffered from some hip bursitis on both sides, possibly work-related, which resolved. Therefore, IME Physician opined that Claimant fully recovered from her February 2013 work injury and could return to work.

On cross-examination, IME Physician testified Claimant's 2013 surgery revealed a stable meniscus tear. IME Physician testified the stable meniscus tear eventually resolved and Claimant's operative report did not show any worsening of her arthritis.

## C. Critical Findings of Fact
### i. Credibility Determinations

After reviewing the medical evidence, the WCJ found IME Physician more credible and persuasive than Claimant's Physiatrist for several reasons. WCJ's Op., 11/28/17, Finding of Fact (F.F.) No. 4. First, IME Physician, board-certified in orthopedic surgery, had better credentials for the determination of the alleged type of injuries Claimant sustained. Id. Second, statements in Claimant's medical records support IME Physician's opinions. Id. Third, the results of Claimant's diagnostic tests support IME Physician's opinions. Id. Fourth, IME Physician's examinations of Claimant were more comprehensive than those by Claimant's Physiatrist. Id. Fifth, Claimant's Physiatrist did not specify the precise clinical examination and diagnostic findings supporting his diagnosed conditions. Id.

### ii. Right-Knee Injury

Based on IME Physician's testimony and opinions, the WCJ made the following findings regarding the nature and extent of Claimant's work injury. IME Physician first examined Claimant in November 2015 and took a history of her work-related right-knee injury. F.F. No. 25; Dep. of Jeffrey Malumed, M.D. (Malumed Dep.), 4/3/17, at 5-8. IME Physician noted that a March 2013 MRI of Claimant's right knee showed some soft tissue injury to the kneecap, specifically the

7

patella, a tear of the meniscal cartilage in the knee joint, and some kneecap arthritis. F.F. No. 26; Malumed Dep. at 6. IME Physician testified that Claimant's first right-knee surgery, performed on April 24, 2013, revealed a stable meniscal tear and a little bit of arthritis in the knee joint. F.F. No. 28; Malumed Dep. at 6. He explained that Claimant's surgeon did not remove the meniscus because it was stable. Malumed Dep. at 6.

IME Physician further testified that a June 2014 MRI of Claimant's right knee came back normal with no meniscal or ligament tears. F.F. No. 26; Malumed Dep. at 7. Claimant's second right-knee surgery, performed on January 15, 2015, showed some arthritic changes, but no meniscal or ligament tears at the time of the surgery. F.F. No. 29; Malumed Dep. at 7.

Also, at the time of IME Physician's November 2015 examination, Claimant showed no signs of meniscal, cartilage or ligament tears in her knees. F.F. No. 31; Malumed Dep. at 8. Claimant had no fluid in the knee joint area and her knee examination was otherwise normal. F.F. No. 31; Malumed Dep. at 8.

Consequently, the WCJ found that IME Physician's testimony established that at the time of his November 2015 examination, Claimant no longer had any cartilage or ligament tears. F.F. No. 33; Malumed Dep. at 9. IME Physician further testified that although Claimant had a little bit of arthritis in her knee, her arthroscopic surgery resolved that. F.F. No. 33; Malumed Dep. at 9.

In addition, IME Physician noted that Claimant had some mild complaints of pain consistent with chondromalacia under her kneecap. However, IME Physician stated that this condition is normal for someone of Claimant's age and size. F.F. No. 33; Malumed Dep. at 9. Consequently, IME Physician testified that he thought that Claimant fully recovered from her right-knee injury and meniscus tear as of that date. F.F. No. 33; Malumed Dep. at 10.

Nine months later, in August 2016, IME Physician again examined Claimant. At this time, an examination of Claimant's knees indicated that her right and left knees were identical. F.F. No. 37. Malumed Dep. at 16. Tests for ligament tears were negative. The two cruciate and two collateral ligaments in the knees were normal. F.F. No. 37. Malumed Dep. at 16. Claimant had a full range of motion in her knees. Essentially, Claimant had a normal knee exam except for a little clicking and popping underneath the kneecap, which is a common finding. F.F. No. 37. Malumed Dep. at 16.

IME Physician also observed that Claimant did not have any treatment for her right knee during the year prior to the August 2016 examination. F.F. No. 39; Malumed Dep. at 17. IME Physician testified that Claimant recovered from her arthroscopic surgeries and did not need any further medical treatment as of the date of the August 2016 examination. In addition, IME Physician opined that Claimant could resume her normal activities, both at home and at work. F.F. No. 39; Malumed Dep. at 18. Ultimately, IME Physician opined that Claimant fully recovered from her work-related right-knee injury as of his August 2016 examination. F.F. No. 42; Malumed Dep. at 20.

### iii. Alleged Work-Related Back Injuries

The WCJ also credited IME Physician's testimony that Claimant did not sustain any other work-related injuries as a result of her fall in February 2013. IME Physician's testimony established that at the time of his November 2015 examination, Claimant had a normal back examination with some subjective complaints of pain. F.F. No. 34; Malumed Dep. at 10. Claimant's medical records clearly showed the lack of any back complaints until a year and a half after the work injury. IME Physician opined that those complaints had no relationship to Claimant's work injury. F.F. No. 34; Malumed Dep. at 10, 18-19.

Further, at the time of the August 2016 examination, Claimant's lumbar spine was essentially normal except for some subjective complaints of pain. F.F. No. 36; Malumed Dep. at 15. Claimant limited the motion in her back based on her subjective complaints of pain. However, Claimant had no muscle spasms, no reflex changes, no motor changes, no weakness in the muscles, and no sensation changes. F.F. No. 36; Malumed Dep. at 15. In addition, Claimant had negative signs for any type of nerve injury going down her legs and no signs of any sacroiliac joint tenderness, where the vertebral column enters the pelvis. F.F. No. 36; Malumed Dep. at 16.

Ultimately, the WCJ found that IME Physician's testimony established that Claimant's back problems were not part of her work injury. F.F. No. 40; Malumed Dep. at 18-20. Rather, Claimant's back problems were related to chronic, longstanding degenerative changes as opposed to anything related to her work injury. F.F. No. 40; Malumed Dep. at 18-19. To that end, any treatment Claimant

might possibly need would be related to her arthritic changes, which were unrelated to her work injury. F.F. No. 40; Malumed Dep. at 18-19.

### iv. Alleged Work-Related Hip Injury

The WCJ also credited IME Physician's testimony that as of his November 2015 examination, Claimant had an excellent range of motion in her hips. F.F. No. 31; Malumed Dep. at 8. As of his August 2016 examination, Claimant demonstrated full and complete motion of her hips. Claimant had no groin pain, no redness, and no swelling over the muscles. F.F. No. 38; Malumed Dep. at 17. Claimant did have some pain over the greater trochanter region on the outside part of the left and right hip. Otherwise, Claimant's right hip was normal. F.F. No. 38; Malumed Dep. at 17. Ultimately, IME Physician testified Claimant had some hip dysplasia, a congenital condition existing since birth. As such, Claimant's hip dysplasia was not work related. F.F. No. 41; Malumed Dep. at 20. IME Physician further indicated Claimant may have had some hip bursitis on both sides, which could have been work related. However, IME Physician testified this is a minor condition that would not stop Claimant from working and that she recovered from it. F.F. No. 41; Malumed Dep. at 22.

### v. Alleged Work-Related Left-Knee Injury

IME Physician also testified that as of his November 2015 examination, Claimant had normal findings in both knees, with some chondromalacia underneath the kneecaps, which is common in persons of Claimant's age and size. F.F. No. 33; Malumed Dep. at 9. As of IME Physician's August 2016 examination, Claimant's knees were normal with some chondromalacia, or clicking and popping, under the

11

kneecaps, which is common. F.F. No. 37; Malumed Dep. at 16. Ultimately, the WCJ found that IME Physician's testimony established that Claimant did not have a specific injury to her left knee and that any left-knee chondromalacia was not related to her work injury. F.F. No. 40; Malumed Dep. at 18.

### vi. Full Recovery From Work Injury

Accordingly, the WCJ credited IME Physician's testimony that Claimant fully recovered from her work-related, right-knee injury as of his August 17, 2016 examination. F.F. No. 42; Malumed Dep. at 20-23.

### vii. Review and Penalty Petitions

Based on IME Physician's testimony, the WCJ determined that the notice of compensation payable (NCP) was materially correct. F.F. No. 45. The WCJ further determined that the evidence did not establish that Employer violated the terms of the Act or it rules and regulations. Id.

### D. WCJ's Conclusions of Law

Based on IME Physician's credible testimony that Claimant fully recovered from her work-related right-knee injury as of IME Physician's August 17, 2016 examination, the WCJ determined Employer established its right to a termination of Claimant's benefits effective as of that date. Conclusion of Law (C.L.) No. 3. The WCJ further determined that the description of injury was materially correct and that Claimant failed to establish a right to relief in her review petition. C.L. No. 4. Therefore, the WCJ denied Claimant's review petition. The WCJ also determined, based on the evidence, that Employer did not violate the terms

of the Act or its regulations. C.L. No. 5. Thus, the WCJ denied Claimant's penalty petition.

Ultimately, the WCJ granted Employer's termination petition effective August 17, 2017. C.L. No. 6. The WCJ also awarded Claimant 10% statutory interest on any deferred amounts of workers' compensation benefits due her. Id.

### E. Board's Decision

On appeal, the Board affirmed. The Board reviewed the medical evidence and determined that IME Physician's testimony supported the WCJ's grant of Employer's termination petition and denial of Claimant's review petition. In addition, the Board rejected Claimant's contention that the WCJ erred in failing to find Employer violated the Act by not voluntarily amending the description of injury based on a previous IME from a different doctor that revealed additional work injuries. The Board reasoned that Section 406.1 of the Act,[2] which requires an employer to investigate a report of a work injury and issue an appropriate Workers' Compensation Bureau (Bureau) document within 21 days of the notice of the injury, does not impose any ongoing duty upon the employer throughout the pendency of the claim.

The Board also rejected Claimant's contention that the WCJ's decision violated the reasoned decision requirement in Section 422(a) of the Act, 77 P.S. §834. To the contrary, the Board found that the WCJ articulated an objective basis for her credibility determinations as required by Daniels v. Workers' Compensation

---

[2] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1.

13

Appeal Board (Tristate Transport), 828 A.2d 1043 (Pa. 2003). Therefore, the Board affirmed the WCJ's decision. Claimant petitions for review.[3]

### III. Discussion

### A. Standard of Review

Claimant first contends the Board erred by only applying a substantial evidence analysis without determining whether the WCJ abused her discretion or capriciously disregarded competent and relevant evidence. See Leon E. Wintermyer, Inc. v. Workers' Comp Appeal Bd. (Marlowe), 812 A.2d 478, 487 (Pa. 2002) (holding that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court.") Claimant asserts a capricious disregard of evidence exists where the agency willfully and deliberately disregarded competent testimony or other relevant evidence that a person of ordinary intelligence could not possibly have avoided in reaching a result. Station Square Gaming L.P. v. Pa. Gaming Control Bd., 927 A.2d 232 (Pa. 2007).

### B. Employer's Termination Petition

### 1. Argument

### a. Change in Condition

Claimant first argues that an employer seeking a termination of benefits must present evidence establishing an actual change in the claimant's physical

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

condition since the last disability determination. Lewis v. Workers' Comp. Appeal Bd. (Giles & Ransome, Inc.), 919 A.2d 922 (Pa. 2007). Here, Claimant alleges IME Physician never identified a change in her condition. Rather, IME Physician denied the accepted work injury, a right-knee tear, ever existed. Claimant further alleges the Board erroneously suggested that IME Physician's testimony, that there was no evidence of any injury, satisfied Employer's burden of proof. To that end, Claimant maintains IME Physician did not state there was no evidence of any injury; instead IME Physician stated that the work injury, as he defined it, resolved.

### b. Competency of Medical Opinion

Claimant next contends that if a medical expert does not recognize the compensable injury, the expert's testimony that the claimant fully recovered from that injury cannot support a termination of benefits. Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller), 942 A.2d 213 (Pa. Cmwlth. 2008); Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.), 865 A.2d 991 (Pa. Cmwlth. 2005). As noted above, Claimant asserts IME Physician did not acknowledge her right-knee tear. Therefore, Claimant argues IME Physician's testimony cannot be considered substantial, competent evidence in support of Employer's termination petition. Westmoreland Cty.; Gillyard.

Claimant further asserts IME Physician never testified that her work injury did not aggravate a degenerative right-knee condition or that the degenerative condition resolved. Where a compensable injury could have been caused or aggravated by a work incident, the employer must show that the aggravation resolved. Jones v. Workers' Comp. Appeal Bd. (J.C. Penney Co.), 747 A.2d 430

15

(Pa. Cmwlth. 2000). In addition, once disability is established, the burden of proof never shifts to the claimant to prove an ongoing connection between her disability and the work injury. Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers), 635 A.2d 1123 (Pa. Cmwlth. 1993).

Here, Claimant asserts, because she has ongoing conditions, Employer's medical evidence needed to establish why those conditions were not related to the work injury. Because IME Physician's testimony failed to do this, Claimant argues IME Physician's testimony did not support a termination of her benefits.

Claimant further contends expert medical testimony cannot be considered competent if it is unsupported by or inconsistent with the record. City of Phila. v. Workers' Comp. Appeal Bd. (Kreibel), 29 A.3d 762 (Pa. 2011); Newcomer v. Workmen's Comp. Appeal Bd. (Chambers), 635 A.2d 1123 (Pa. Cmwlth. 1993). Here, Claimant asserts, the WCJ erred in finding that IME Physician's opinions were supported by the treatment records. Claimant maintains this is patently incorrect.

Summarizing, Claimant asserts IME Physician's opinions were legally incompetent because he rejected the existence of the work injury, and his testimony and opinions were equivocal and in direct conflict with the record. As such, Claimant argues the WCJ erred in relying on incompetent medical testimony as a basis for rejecting Claimant's Physiatrist's competent opinions. U.S. Steel Mining Co., LLC v. Workers' Comp. Appeal Bd. (Sullivan), 859 A.2d 877 (Pa. Cmwlth. 2004).

## 2. Analysis

### a. Role of WCJ; Appellate Review; Capricious Disregard

Initially, we recognize that the WCJ, as the ultimate fact-finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight. A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013). As such, the WCJ may accept or reject the testimony of a witness, including an expert witness, in whole or in part. Id.

Further, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53 (Pa. Cmwlth. 2014). To that end, we examine the record in its entirety to see if it contains evidence a reasonable person would find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the WCJ's findings must be upheld. Id. In addition, we must view the evidence in the light most favorable to the prevailing party and give that party the benefit of all inferences reasonably deducible from the evidence. Id.

Moreover, a capricious disregard of the evidence occurs only when the WCJ deliberately or baselessly disregards apparently trustworthy evidence. Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works), 862 A.2d 137 (Pa. Cmwlth. 2004). Where there is substantial evidence to support a WCJ's findings, and those findings support the WCJ's legal conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard. Wintermyer. Further, where the WCJ discusses the evidence

17

in question, but rejects it as less credible or assigns it less evidentiary weight than other evidence, the WCJ's determination does not constitute a capricious disregard of that evidence. Reed v. Workers' Comp. Appeal Bd. (Allied Signal, Inc.), 114 A.3d 464 (Pa. Cmwlth. 2015).

## b. Employer's Termination Petition

An employer seeking to terminate a claimant's benefits must prove that a claimant's disability fully resolved, or that any existing injury is not the result of the work-related injury. O'Neill v. Workers' Comp. Appeal Bd. (News Corp. LTD.), 29 A.3d 50 (Pa. Cmwlth. 2011). An employer may meet this burden by presenting unequivocal and competent medical evidence of full recovery. Id.

Competency, when applied to medical evidence, involves a determination that the expert's opinion is sufficiently definite and unequivocal to render it admissible. Cerro Metal Prods. Co. v. Workers' Comp. Appeal Bd. (PLEWA), 855 A.2d 932 (Pa. Cmwlth. 2004). An expert's testimony is unequivocal if, after providing a foundation, he states that he believes or thinks the facts exist. Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.), 35 A.3d 69 (Pa. Cmwlth. 2011). Whether an expert's testimony is unequivocal is a question of law fully reviewable on appeal. Id. In reaching that determination, we must review the testimony of a witness as a whole and not take words or phrases out of context. Id.

## i. Change in Condition

Claimant first contends IME Physician never identified a change in Claimant's condition and that he denied that the accepted injury, a right-knee tear,

18

ever existed. We disagree. IME Physician testified that Claimant's medical records showed some soft tissue injury to her right kneecap and "a tear of the meniscal cartilage inside the knee joint, and some kneecap arthritis." Malumed Dep. at 6; R.R. at 116. IME Physician further testified that Claimant's April 2013 operation "came back finding a stable meniscal tear." Id. The doctor explained that Claimant's surgeon did not remove the meniscus because it was stable. Id.

IME Physician later testified that Claimant's June 2014 MRI, and second surgery, performed in January 2015, did not show any meniscal or ligament tears. See F.F. Nos. 26, 29. However, as the WCJ explained, IME Physician's testimony established Claimant had a stable meniscal tear and some arthritis in the knee joint at the time of her first surgery, performed in April 2013. F.F. No. 28. As such, this case is distinguishable from our decisions in Westmoreland County and Gillyard, where the employers' medical experts did not acknowledge the accepted work injuries in their opinions of recovery.

Rather, we believe the Board properly relied on Jackson v. Workers' Compensation Appeal Board (Resources for Human Development), 877 A.2d 498 (Pa. Cmwlth. 2005), where we determined that a doctor's opinion of full recovery, based upon an assumption that the accepted work injury occurred, provided substantial competent evidence for a termination of the claimant's benefits. The facts here are even more compelling than those in Jackson because IME Physician testified that Claimant's records established a stable meniscal tear that healed itself. IME Physician also recognized that Claimant did have some arthritis in her knees, which her surgery resolved. F.F. No. 33; Malumed Dep. at 9.

19

Therefore, we reject Claimant's contention that IME Physician's testimony cannot support a termination of benefits because he did not recognize Claimant's compensable right-knee tear. To the contrary, IME Physician's testimony, viewed in its entirety, establishes that Claimant's right-knee tear fully resolved as of his August 2016 examination. We also find IME Physician's testimony and opinions as to Claimant's full recovery from right-knee injury to be definite and unequivocal. Cerro. Consequently, we hold that IME Physician's testimony provides substantial, competent evidence supporting the WCJ's Finding of Fact No. 39, which states in part that Claimant's right-knee injury fully and completely resolved as of IME Physician's August 2016 examination. Lewis.

## ii. Aggravation of Preexisting Conditions

Claimant next asserts IME Physician's testimony as to her full recovery is incompetent because he never expressly stated that Claimant's work injury did not aggravate her preexisting degenerative knee conditions. In support, Claimant cites Jones, where the employer's medical expert admitted on cross-examination that trauma from the claimant's work injury could possibly have caused her patellar chondromalacia. Because the medical expert did not opine to a reasonable degree of medical certainty that the claimant's chondromalacia did not result from her work-related injury and that the work injury did not aggravate her preexisting chondromalacia, we determined that the employer's medical evidence failed to demonstrate that the claimant's chondromalacia was unrelated to her work injury.

The present case, however, is distinguishable from Jones. With respect to Claimant's degenerative right-knee conditions, IME Physician testified that

20

Claimant's March 2013 MRI and April 2013 surgery revealed a little bit of arthritis in the knee joint. F.F. No. 28; Malumed Dep. at 6. Claimant's January 2015 surgery also showed some arthritic changes, which were taken care of arthroscopically. F.F. No. 33; Malumed Dep. at 9.

IME Physician also testified that his examinations revealed Claimant suffered from some chondromalacia under her kneecaps, which is fairly common in someone of Claimant's age and size. F.F. No. 33; Malumed Dep at 9. At the time of his August 2016 examination, IME Physician opined that Claimant's knees were normal except for some mild to moderate chondromalacia, which he again stated is a fairly common degenerative condition associated with aging. F.F. No. 37; Malumed Dep at 16. Unlike the situation in Jones, at no point in his testimony did IME Physician indicate that Claimant's chondromalacia was in any way caused or aggravated by her February 2013 work injury, or that it prevented her from returning to work. Therefore, we reject Claimant's contention that IME Physician's failure to expressly state that Claimant's work injury did not cause or aggravate any of her degenerative right-knee conditions rendered his opinion incompetent.

### iii. Improper Foundation

Claimant next contends a medical expert's opinion may be rendered incompetent where it is unsupported by or inconsistent with the medical evidence. In particular, Claimant asserts an expert's opinion does not constitute substantial, competent evidence where it is based on a series of assumptions that lack a correct factual predicate. Kreibel.

21

Here, Claimant points out that one of the reasons the WCJ gave for finding IME Physician's testimony more credible than that of Claimant's Physiatrist was that Claimant's medical records supported IME Physician's opinions. See F.F. No. 4. Claimant asserts IME Physician's opinions were not consistent with the medical records when viewed in their entirety.

To that end, Claimant maintains that Employer withheld numerous records upon which Dr. Peter A. Feinstein (Dr. Feinstein) (a physician who also performed an IME of Claimant at Employer's request) relied in stating that a causal relationship appeared between Claimant's fall at work and various injuries to her back, hips and left knee.

Claimant's contention lacks merit. In her decision, the WCJ observed that the claims adjuster's note log, admitted into evidence without objection, established that a note by Chienyenwa Ihebuzoran (Adjuster), completed on December 22, 2014, established Employer received and reviewed Dr. Feinstein's IME report. F.F. No. 44. The WCJ recognized that Dr. Feinstein indicated that there appeared to be a causal relationship between Claimant's current knee, hip and back complaints and her work injury. F.F. No. 44. However, the WCJ further found:

> Although the note specified as aforesaid, statements in the note didn't establish any diagnoses of Claimant's knees, hips, and back to a reasonable degree of medical certainty or otherwise and didn't establish any causal relationship about the Claimant's complaints with respect to the knees, hips, and back and the work injury to a reasonable degree of medical certainty or otherwise.

F.F. No. 44.

22

In addition, Employer asserts in its brief that it provided Claimant's counsel with its entire claim file. Resp't's Br. at 16. Further, Adjuster's note, which included Dr. Feinstein's opinion as to causation, contradicts Claimant's contention that Employer intended to withhold any injury descriptions or medical documentation. See R.R. at 105.

Moreover, as will be discussed more fully below, when asked by the WCJ at the December 2016 hearing if he wished to present Dr. Feinstein's testimony, Claimant's counsel responded: "No. I'll have [Claimant's Physiatrist] testify." See WCJ's Hr'g, 12/8/16, Notes of Testimony (N.T.) at 14; R.R. at 25. Although Claimant's counsel sought to introduce Dr. Feinstein's IME report into evidence, he indicated that he did not intend to introduce the report as substantive evidence. N.T. at 13-14; R.R. at 24-25. Rather, Claimant's counsel explained that he wanted to show that Insurer was aware that its own IME report indicated that Claimant's other injuries, in addition to her right-knee injury, were work-related for purposes of an unreasonable contest. Id. At that point, the WCJ denied Claimant's request to allow the admission of Dr. Feinstein's report on the basis of hearsay. Id.

Summarizing, IME Physician took Claimant's history, reviewed her medical records regarding the treatment of her work injury, and physically examined her on two occasions. IME Physician opined, within a reasonable degree of medical certainty that Claimant fully recovered from her work-related, right-knee injury as of his August 17, 2016 examination. F.F. No. 42; Malumed Dep. at 20-23. Viewing IME Physician's testimony as a whole, we detect no error or abuse of discretion in the WCJ's determination that IME Physician's testimony provided substantial,

23

competent evidence that Claimant fully recovered from her work-related right-knee injury as of August 17, 2016. Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.), 923 A.2d 1197 (Pa. Cmwlth. 2006). Therefore, the WCJ properly granted Employer's termination petition. Id.

## C. Claimant's Review and Penalty Petitions
## 1. Employer's Duty to Correctly Identify Injury
### a. Argument

Claimant advances several arguments in support of her contention that WCJ erred in denying her review petition seeking to expand the description of injury and her penalty petition. We first address Claimant's contention that employers and their insurers have a duty to act in good faith when setting forth a description of the injury in Bureau's documents. Further, Claimant alleges employers have a duty to amend the description, if necessary, if reliable information suggests that the original description is erroneous.

In particular, Claimant asserts the Board correctly identified the duty of insurers under Section 406.1 of the Act, 77 P.S. §717.1, to timely investigate a report of a work injury and to issue an NCP, NTCP or a notice of compensation denial (NCD) within 21 days of receiving notice of a work injury. Claimant also recognizes that where there is a good faith dispute as to the nature of the injury or body parts injured, a review petition is appropriate.

Here, Claimant contends, a separate duty to correct the description of the injury is owed because Employer was in possession of irrefutable medical

24

records, including reports from its own hired experts, identifying work-related injuries or conditions different from those acknowledged in the description of injury. In particular, Claimant asserts, Adjuster's log note, citing two prior IMEs, identified injuries to other body parts that were causally related to her work injury.

In sum, Claimant argues the humanitarian nature of the Act is grotesquely undermined when a lay person such as a claims adjuster is permitted to restrict a claimant's access to necessary medical treatment in a manner inconsistent with reports from its own medical experts. See Pet'r's Br. at 23-24. Claimant emphasizes that the proper focus in any workers' compensation case must be upon the injured worker's rights. Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.), 834 A.2d 524 (Pa. 2003).

Therefore, Claimant requests this Court to reverse the decision and direct that her review petition be granted and the description of the injury enlarged based upon Claimant's Physiatrist's medical opinion. Claimant further requests that this Court issue an order that all insurance carriers have a mandatory duty to act in good faith in setting forth the description of injury and to provide claimants with copies of all medical records, including all IME reports.

### b. Analysis

To begin, we recognize that an employer has a duty under Section 406.1 of the Act, 77 P.S. §717.1, to investigate a reported work injury and to issue either an NCP or NCD within 21 days of receiving notice of the injury. Lemansky v. Workers' Comp. Appeal Bd. (Hagan Ice Cream Co.), 738 A.2d 498 (Pa. Cmwlth.

25

1999). Where, as here, an employer is uncertain of the extent of its liability under the Act, it may initiate payments by filing a NTCP while continuing to investigate the claim. Armstrong v. Workers' Comp. Appeal Bd. (Haines & Kibblehouse, Inc.), 931 A.2d 827 (Pa. Cmwlth. 2007).

However, we reject Claimant's contention that the Act should be interpreted as imposing a mandatory duty upon employers or insurers to unilaterally amend a description of injury after issuing a NCP or NTCP based on later opinions of their own medical experts if those opinions are clearly favorable to the claimant. Here, Employer did comply with Section 406.1 by issuing a medical-only NTCP and an amended NTCP describing Claimant's injury as a right-knee tear.

Therefore, the proper procedure for either party to amend the current description of injury to include additional injuries is to file a review petition under Section 413(a) of the Act, 77 P.S. §772. Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill), 975 A.2d 577 (Pa. 2009); Anderson v. Workers' Comp. Appeal Bd. (Pa. Hosp.), 830 A.2d 636 (Pa. Cmwlth. 2003). In addition, the burden of proof in a review petition is upon the party seeking to modify the NCP's description of injury. Cinram; Anderson.

In short, nothing in the Act requires that an employer accept an IME report expanding the acknowledged description of the injury. To the contrary, our Supreme Court recognized that the Legislature intended that such amendments are to be made only upon consideration of a specific review petition. Cinram. As such, we must decline Claimant's invitation to recognize such a duty. Id.

26

## 2. Withholding/Concealment of Medical Records

### a. Argument

Claimant further contends Employer withheld relevant medical evidence and failed to identify medical records that Dr. Feinstein reviewed in preparing his IME report. Claimant argues Employer had a duty to timely provide Claimant with all medical records related to the work injury and any IME reports. To that end, Claimant maintains Employer violated this duty by failing to provide her with IME reports from Dr. Mansmann and Dr. Feinstein, whose examinations occurred prior to IME Physician's November 2015 and August 2016 examinations. Unless insurers are required to promptly provide injured workers with all their medical records and defense examination reports, Claimant asserts no insurer will voluntarily take action that may cost them more money.

Here, Claimant alleges, if Employer would have timely provided her with these IME reports, and the medical records they relied upon, she may have been able to amend the description of her work injury sooner, perhaps even before IME Physician's examinations in 2015 and 2016. However, because Employer allegedly concealed these records and reports, Claimant could not do so.

Claimant further argues that Dr. Feinstein's report, although not sufficient for an independent finding of fact, would nevertheless corroborate Claimant's Physiatrist's testimony and undermine IME Physician's credibility. In addition, Claimant asserts that although the WCJ and the Board mentioned Adjuster's log note, they capriciously disregarded its true relevance. To that end,

Claimant points out that Adjuster's log note, when referring to Dr. Feinstein's IME report, stated "Full report in CCM." R.R. at 105. Claimant asserts this notation essentially incorporated Dr. Feinstein's report by reference.

Claimant also contends that Adjuster's log note expressly stated the areas of Claimant's complaint and indicated "that a '*causal relationship is established*.'" See Pet'r's Br. at 26 (citing Adjuster's log note, R.R. at 105). Therefore, Claimant argues the WCJ erred and capriciously disregarded relevant, essential evidence by failing to explain the importance of the log note which undermined IME Physician's medical opinions.

Claimant further argues the WCJ erred and violated her rights by making an off-the-record ruling, by conference call, denying her request to depose Adjuster regarding the extent of the medical records allegedly concealed. Claimant acknowledges that WCJs have discretion as to what evidence to allow. However, Claimant argues the WCJ violated her rights by denying her request off the record because evidentiary rulings are essential to the conduct and appearance of a fair and proper hearing and are thus necessary to enable appellate scrutiny of the WCJ's determinations.

### b. Analysis

Initially, we again recognize that the proper procedure for either party to amend the current description of injury is to file a review petition under Section 413(a) of the Act, 77 P.S. §772. Cinram; Anderson. In addition, the burden of proof

28

in a review petition is upon the party seeking to modify the description of injury. Cinram; Anderson.

Although Claimant contends Employer should have provided her with Dr. Feinstein's IME report, Claimant cites no statutory or case law supporting her contention. Section 422(d) of the Act,[4] pertaining to discovery, requires an employer to provide "a true and complete record of the medical and surgical services and hospital treatment, including X rays, laboratory tests, and all other medical or surgical data in the possession or under the control of the party requested to furnish or make such data available." 77 P.S. §835. However, we are unaware of any authority indicating that Section 422(d) requires an employer to automatically (without request) provide a claimant with defense IME reports that it does not intend to submit into evidence.[5]

Here, the WCJ found that Adjuster's log note, admitted into evidence, showed that Dr. Feinstein performed an IME of Claimant in November 2014. See F.F. No. 44. The note indicated that Adjuster received and reviewed the report. R.R. at 105. The note stated: "causal relationship between current complaints of knees, hips and back established; medical necessity of current [treatment] established; … [Claimant] has not reached MMI. Full report in CCM." Id.

---

[4] Added by the Act of June 26, 1919, P.L. 642.

[5] *Cf.* Pa. R.C.P. No. 4010(b)(1).

29

Nevertheless, Claimant's primary argument is that Employer concealed medical records that Dr. Feinstein relied upon in his IME. Section 418 of the Act authorizes a WCJ to subpoena witnesses and order the production of books and other writings. 77 P.S. §833. In addition, Section 436 of the Act[6] authorizes the Secretary of the Department of Labor and Industry, any WCJ, or any member of the Board "to issue subpoenas to require the attendance of witnesses" and "the production of books, documents, and papers pertinent to any hearing." 77 P.S. §992.

At the sole hearing before the WCJ in December 2016, Claimant's litigation counsel advised the WCJ that he filed a review petition and penalty petition seeking to include recognition of Claimant's back and hip injuries as work related. See N.T. at 12; R.R. at 23. When asked if he needed another hearing, Claimant's counsel replied: "No, no, no. We will address it with the medical testimony as well." N.T. at 12-13; R.R. at 23-24.

Further, as discussed above, Claimant's litigation counsel advised the WCJ at hearing that he did not intend to depose Dr. Feinstein. Rather, litigation counsel chose to rely on testimony from Claimant's Physiatrist. Therefore, we discern no merit to Claimant's contention that Employer violated the Act by failing to timely provide Claimant with any medical records or IME reports.

However, Claimant also argues the WCJ abused her discretion by denying, in an off-the-record telephone conference call, her request to depose Adjuster in an attempt to ascertain the full extent of the records Insurer allegedly

---

[6] Added by the Act of February 8, 1972, P.L. 25.

30

concealed. Conversely, Employer asserts Claimant agreed to refrain from conducting the deposition. See Resp't's Br. at 7-8. Employer further contends that Claimant had Adjuster's claims file and that there were no concealed records. Id.

First and foremost, the record does not show that either party requested that the conference call be on the record. Second, the record does not show Claimant requested that the WCJ's ruling, or an objection thereto, be noted in the record. Absent any notation of any ruling or objections thereto, this Court may not consider material that is not a part of the certified record. Croft v. Unemployment Comp. Bd. of Review, 662 A.2d 24 (Pa. Cmwlth. 1995).

Moreover, as discussed above, the WCJ admitted Adjuster's log note (R.R. at 105) into evidence as Claimant's Exhibit C-5. F.F. No. 44. Given the WCJ's review and analysis of Adjuster's log note, we reject Claimant's contention that the WCJ capriciously disregarded any part of it. Reed. We also reject Claimant's assertion that the language "Full report in CCM" in the log note indicates that Employer deliberately concealed medical records that should have been available to Claimant under the Act and its regulations.

For the above reasons, we discern no merit to Claimant's contention that Employer withheld or concealed medical records that it had a duty to disclose under the Act.

31

**D. Credibility Determinations**

**1. Argument**

Claimant also contends the WCJ's credibility determinations are being tainted by Employer's incompetent, equivocal and unsupported medical testimony. Claimant attacks each of the WCJ's credibility determinations as being unsupported by the record. Therefore, Claimant asserts the WCJ's decision does not satisfy the "reasoned decision" requirements in Section 422(a) of the Act.

**2. Analysis**

Section 422(a) of the Act requires a WCJ to issue a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions …." 77 P.S. §834. To satisfy Section 422(a), a WCJ's decision must permit adequate appellate review. Gumm v. Workers' Comp. Appeal Bd. (Steel), 942 A.2d 222 (Pa. Cmwlth. 2008). The purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness rather than another. Id.

Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. Daniels. A WCJ must articulate an actual objective basis for her credibility determinations in order for her decision to permit effective appellate review. Daniels, 828 A.2d at 1053. However, there are countless objective factors which may support credibility determinations. Id. Nonetheless, these factors must be identified and articulated. Id.

In Finding of Fact No. 4, the WCJ stated her reasons for finding IME Physician's testimony and opinions more credible than those of Claimant's Physiatrist. First, IME Physician, board-certified in orthopedic surgery, had superior credentials for the determination of the type of injuries Claimant allegedly sustained. Id. Second, statements in Claimant's medical records support IME Physician's opinions. Id. Third, results of Claimant's diagnostic tests support IME Physician's opinions. Id. Fourth, IME Physician's examinations of Claimant were more comprehensive than those by Claimant's Physiatrist. Id. Fifth, Claimant's Physiatrist did not specify the precise clinical examination and diagnostic findings supporting his diagnosed conditions. Id.

When reviewing a WCJ's credibility determinations, substantial deference is due. Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.), 962 A.2d 14 (Pa. Cmwlth. 2008). "Credibility determinations are more than a series of individual findings." Id. at 19. "Rather, they represent the evaluation of a total package of testimony in the context of the record as a whole and reflect subtle nuances of reasoning that may not be fully articulated, nor even fully appreciated, by the fact-finder." Id. Accordingly, we must view the WCJ's reasoning as a whole and overturn her credibility determinations only if they are arbitrary, capricious, or "so fundamentally dependent on a misapprehension of material facts, or otherwise so flawed," as to render them irrational. Id.

Having determined that IME Physician's testimony provided substantial, competent evidence for the WCJ's critical findings, we reject Claimant's contention that the WCJ's credibility determinations were based on incompetent

medical testimony or an incomplete record. Although Claimant disagrees with the WCJ's credibility determinations, such disagreement is not a basis for setting them aside. Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.), 3 A.3d 734 (Pa. Cmwlth. 2010). Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal. Gumm. Here, the WCJ's credibility determinations were neither arbitrary nor capricious. Daniels; Gumm.

## IV. Conclusion

For the above reasons, we discern no error in the WCJ's decision and order granting Employer's termination petition and denying Claimant's review and penalty petition. Accordingly, we affirm the order of the Board.


_____
ROBERT SIMPSON, Judge

34

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Gina DeBellis,                                      :
                              Petitioner            :
                                                    :
          v.                                        :     No. 1358 C.D. 2018
                                                    :
Workers' Compensation Appeal                        :
Board (Dermatology, LTD),                           :
                              Respondent            :


# **O R D E R**

**AND NOW**, this 5th day of June, 2019, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.


                                        _____
                                        ROBERT SIMPSON, Judges