**Stella JONES, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (J.C. PENNEY COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.

Decided Jan. 28, 2000.

Reargument Denied March 30, 2000.

Susan E. Kadilak, Beaver, for petitioner.

Linda L. Pretz, Pittsburgh, for respondent.

Before DOYLE, President Judge, COLINS, J., and LEADBETTER, J.

LEADBETTER, Judge.

Claimant Stella Jones appeals from the order of the Workers' Compensation Appeal Board (Board), which affirmed the decision and order of the Workers' Compensation Judge (WCJ) granting her employer's termination petition. The question presented for review is whether the opinion of employer's medical expert constitutes sufficient, competent evidence to satisfy employer's burden thereby warranting the termination of claimant's benefits. After review, we reverse.

While working for J.C. Penney Co. in May 1994, claimant fell and injured her knee. As a result of her injury, claimant received benefits pursuant to a notice of compensation payable. In September 1996, employer filed its termination petition alleging that claimant had fully recovered from her May 1994 work injury as of July 15, 1996. Claimant denied the material allegations of the termination petition and litigation followed.

In support of its petition, employer presented the deposition testimony of Stanley Bushkoff, M.D., a board certified orthopedic surgeon. Dr. Bushkoff compiled claimant's history, reviewed her medical reports and physically examined her on July 15, 1996. Based on his review and examination, Dr. Bushkoff opined that claimant sustained a medial meniscus tear as a result of her fall at work and offered the following diagnoses: status post-partial medial meniscectomy, work-related and chondromalacia of the patella and medial femoral compartment, not work-related.[1]

---

1. Dr. Bushkoff described chondromalacia, an arthritic condition, as softening of the carti-

Dr. Bushkoff opined that the chondromalacia of the medial femoral compartment was not work-related because it was observed during the claimant's June 1994 surgery to repair the medial meniscal tear. According to Dr. Bushkoff, chondromalacia takes a great deal of time to develop on a post-traumatic basis and, therefore, since it was observed during surgery only one month after the fall, the condition could not be attributed to the work injury. Dr. Bushkoff also opined that claimant's complaints of pain at the time of his examination, as well as her physical limitations, were attributable to the chondromalacia of the patella. Although Dr. Bushkoff did not specifically opine that claimant had fully recovered from her medial meniscus tear, he testified that the physical restrictions under which he felt claimant could return to work and indicated that these were imposed as a result of the patellar chondromalacia.

In opposition to the petition, claimant testified on her own behalf and presented the deposition testimony of James D'Antonio, M.D., a board certified orthopedic surgeon and one of her treating physicians. Dr. D'Antonio diagnosed claimant with work-related post-traumatic chondromalacia of the patella and opined that although she continued to suffer from the condition, her symptoms could be controlled by limiting her activities.

After review of the evidence of record, the WCJ granted employer's termination petition, concluding that claimant had fully recovered from her May 1994 work injury and that any current disability she suffered was due to non work-related factors, including her pre-existing chondromalacia. In reaching this conclusion, the WCJ found Dr. Bushkoff's opinion regarding the cause of claimant's chondromalacia to be more credible than that of Dr. D'Antonio. On appeal, the Board affirmed. The present appeal followed.

lage in the knee.

On appeal, claimant contends that the Board and WCJ's conclusion that claimant had fully recovered from her work-related injury is not supported by sufficient, competent evidence because Dr. Bushkoff admitted on cross-examination that claimant's chondromalacia of the patella could have been caused by the May 1994 injury and that that injury could have also aggravated her pre-existing chondromalacia of the medial femoral compartment. Specifically, claimant notes that although Dr. Bushkoff opined on direct examination that neither form of claimant's chondromalacia was work-related, Dr. Bushkoff then testified as follows on cross-examination:

Q. And the reason why you concluded the medial femoral compartment chondromalacia was not related was because it was seen only a month later following the trauma [during] the surgery by Dr. Mantica ...

A. Yes.

Q. And that would cause you to believe that that clearly had pre-existed her trauma; is that right?

A. Yes.

Q. Could she, assuming she was not symptomatic at all with that right knee before her fall on her right knee, could she have aggravated that pre-existing medial femoral compartment chondromalacia with the fall, Doctor, to make it a symptomatic problem?

A. It's possible.

Q. Could that direct trauma to the knee have worsened the condition of that softened cartilage in the medial femoral compartment, Doctor?

A. Again, it's possible.

R. 30a. With respect to the chondromalacia of the patella, Dr. Bushkoff further testified:

Q. The chondromalacia of the patella was not seen, as you've indicated a couple of times for us, presumably by Dr. Mantica during surgery because he's indicated he explored the patellofemoral

compartment and it did not reveal any pathology; correct?

A. Yes.

Q. So apparently from the observations he made at the time of surgery, that was not a problem, . . .

A. Yes.

Q. And you've indicated that is present at the time of your examination in July of 1996; is that correct?

A. Yes. .

Q. Is it possible, Doctor, that with that type of passage of time following the direct trauma of May 1994, that over the course of two years this was sufficient time for that trauma to bring on a patellofemoral chondromalacia?

A. Yes.

Q. So it is possible, Doctor, that the patellofemoral chondromalacia that you diagnosed in July of 1996 could have been caused by the trauma of May of 1994?

A. Yes.

R. 31a—32a. Based on the above testimony as well as the fact that Dr. Bushkoff indicated that the physical restrictions he placed upon claimant were to accommodate the patellar chondromalacia, claimant argues that employer's evidence does not support the finding that she has fully recovered from her work injury. We agree.

■ Recently, in *Parker v. Workers' Compensation Appeal Bd. (Dock Terrace Nursing Home)*, 729 A.2d 102 (Pa.Cmwlth. 1999), this court reiterated the employer's burden of proof in a termination proceeding:

It is well established that an employer seeking to terminate workers' compensation benefits bears the burden of proving by substantial evidence either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the employee's work injury. Employer must show that any continued disability is the result of an independent cause or the lack of a causal connection between the continued dis-

ability and the original compensable injury. In either situation, this is a considerable burden because the claimant's disability is presumed to continue until demonstrated otherwise; there is no burden on the claimant to prove anything at all.

*Id.* at 104—05 (citations omitted). *See also Battiste v. Workmen's Compensation Appeal Bd. (Fox Chase Cancer Center)*, 660 A.2d 253 (Pa.Cmwlth.1995). In addition, when the employer offers medical testimony to meet its burden of proof, the medical expert's opinion must be rendered unequivocally and to a reasonable degree of medical certainty in order to constitute substantial evidence of record. *See generally Broughton v. Workers' Compensation Appeal Bd. (Disposal Corp. of America)*, 709 A.2d 443 (Pa.Cmwlth.1998).

■ Applying the above standards to evaluate Dr. Bushkoff's testimony, we conclude that it is insufficient to meet employer's burden of proof. When reviewed in its entirety, it is clear that Dr. Bushkoff did not opine to a reasonable degree of medical certainty that claimant's chondromalacia of the patella did not result from her work-related injury and that the injury did not aggravate her pre-existing chondromalacia of the medial femoral compartment. Rather, as a whole, the evidence demonstrates that there is a possibility that claimant's work-related injury caused her patellar chondromalacia and aggravated the pre-existing chondromalacia. Therefore, the medical evidence credited by the Board and WCJ fails to fulfill employer's burden to demonstrate that claimant's current disability is unrelated to her work injury.

Accordingly, the order of the Board is reversed.

## *ORDER*

AND NOW, this 28th day of January, 2000, the order of the Workers' Compensa-

tion Appeal Board in the above captioned matter is hereby reversed.