IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carmel G. Jean,            :
                                :
                Petitioner   :
                                :
          v.              :  No. 74 C.D. 2022
                                :  Submitted:  February 24, 2023
Bloomin' Brands, Inc. (Workers'   :
Compensation Appeal Board),    :
                                :
              Respondent :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  September 25, 2023

Carmel G. Jean (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of the Workers' Compensation Judge (WCJ) denying both her Review Petition to expand the description of her work injury and Penalty Petition, and granting Bloomin' Brands, Inc.'s (Employer) Termination Petition. Claimant contends that the WCJ's finding that Claimant's work injury was limited to a lumbar strain and sprain and post-traumatic headaches is not supported by substantial evidence because the WCJ misconstrued the testimony of Employer's medical expert. Upon review, we affirm.

## I. Background

On September 7, 2019, Claimant sustained an injury in the course and scope of her employment with Employer. Pursuant to a Notice of Temporary Compensation Payable (NTCP), Employer recognized Claimant's injury as a low back strain and paid Claimant workers' compensation benefits. The NTCP converted to a Notice of Compensation Payable (NCP) by operation of law.

On December 27, 2019, Employer filed a Termination Petition alleging that Claimant had fully recovered from her work-related low back strain as of November 20, 2019. Claimant filed a timely answer denying the material allegations.

On January 15, 2020, Claimant filed a Review Petition alleging an incorrect injury description. Claimant sought to amend the description of her injury to include lumbar radiculopathy, post-concussion syndrome, and post-traumatic headaches. Employer filed a timely answer admitting that the injury description should be amended to include post-traumatic headaches from which Claimant had fully recovered as of January 3, 2020. However, Employer otherwise denied that the description of her injury should be expanded to include lumbar radiculopathy or post-concussion syndrome.

On February 26, 2020, Claimant filed a Penalty Petition alleging that Employer violated the Pennsylvania Workers' Compensation Act (Act)[1] by unilaterally modifying and stopping Claimant's temporary total disability benefits without Claimant's agreement or an order from the court. Claimant sought penalties in the amount of 50% of all outstanding benefits owed as well as unreasonable

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

2

contest attorney's fees. Employer filed a timely answer denying the material allegations.

The petitions were consolidated and assigned to a WCJ for disposition. Before the WCJ, Claimant testified and presented the deposition testimony of two medical experts, Steven Diamond, D.O. (Dr. Diamond), and Adam Weinstein, M.D. (Dr. Weinstein). Employer also presented the deposition testimony of two medical experts, Amir Fayyazi, M.D. (Dr. Fayyazi), and Bryan X. DeSouza, M.D. (Dr. DeSouza).

The WCJ summarized the evidence and made the following relevant findings. Claimant testified that she worked for Employer as a kitchen manager for 11 years. On September 7, 2019, she slipped on plastic on the floor and fell, hitting her head on the lower part of a sink and her low back on the floor. She also hit the right side of her forehead. Claimant experienced headaches and was treated for a concussion. Claimant receives therapy for her back, shoulder, head, and leg. Her current complaints include dizziness, headaches, shoulder pain, lower back pain, and right leg cramps. Claimant also complains of short-term memory, vision, and dizziness issues. Claimant testified that she is unable to return to her pre-injury job because she cannot sit, stand, or lay for long periods. Her job requires her to bend down, lift, climb, and continuously move. Claimant testified that prior to the September 7, 2019 work incident, she had occasional low back pain which she attributed to either falling off a ladder in 2016 or being on her feet at work. WCJ's Op., 2/17/21, Finding of Fact (F.F.) No. 6(a)-(e).

Claimant's first medical expert, Dr. Diamond, who is board certified in family medicine, testified that he examined Claimant on October 7, 2019, and took a medical history from her. Claimant reported that she fell backward and hit her

3

head and low back on September 7, 2019. Claimant complained of sharp and throbbing headaches, low back pain, radiating pain to the right lower extremity, light sensitivity, and dizziness. Dr. Diamond testified that his physical examination of Claimant revealed reduced range of motion of the cervical spine and spasm and reduced range of motion of the lumbar spine. Neurologically, Claimant's gait and balance were poor. Claimant's Dix-Hallpike test was benign. Dr. Diamond reviewed Claimant's November 18, 2019 lumbar spine MRI, which revealed L5-S1 spondylolisthesis. However, he could not say when that happened. Dr. Diamond acknowledged that the medical records immediately following the work incident do not mention a cervical injury. Dr. Diamond diagnosed Claimant with post-concussion syndrome with cervicalgia and lumbar strain and sprain. He saw Claimant three more times; her symptoms and examinations were unchanged. F.F. No. 4(a)-(d).

Claimant's second medical expert, Dr. Weinstein, who is board certified in adult neurology, testified that he first examined Claimant on November 21, 2019, for her September 7, 2019 work-related injury when she fell backward and hit her low back and the back of her head. Claimant complained of headaches three to four times per week, light sensitivity, nausea, dizziness, and low back pain that radiates to the buttock on both sides and sometimes to the feet. Dr. Weinstein opined that Claimant's complaints of dizziness, balance issues, memory loss, and blurred vision are subjective complaints. Dr. Weinstein found Claimant's neurological examination to be normal except for bilateral straight leg raising. Her mental status examination, cranial nerves, coordination, reflexes, and sensory examination were all normal. There was no aversion to light upon testing. Dr. Weinstein opined that Claimant sustained a head contusion with concussion without loss of consciousness,

4

symptoms of post-concussive syndrome, post-traumatic headaches, low back contusion with low back pain and radicular symptoms. He testified that Claimant's December 2, 2019 EMG did not clearly confirm lumbar radiculopathy but her clinical symptoms supported lumbar radiculopathy. Dr. Weistein noted that the November 18, 2019 brain MRI (brain MRI) was normal. F.F. No. 5(a)-(e).

Employer's first medical witness, Dr. Fayyazi, who is a board-certified orthopedic surgeon, testified that he performed an independent medical examination (IME) of Claimant on November 20, 2019, for the September 7, 2019 injury. Claimant relayed to him that the injury occurred when she slipped and fell and landed on her back and hit her head. Claimant described her complaint level as 8/10 regarding her headaches and concussion, and 3/10 regarding her low back. Claimant also complained of leg pain but said the back pain was worse than the leg pain and the right leg was worse than the left leg. During his physical examination, Dr. Fayyazi noted that Claimant was able to walk on her heels and her toes but acted as if she was unsteady. She also demonstrated unsteadiness performing a single leg stand. According to Dr. Fayyazi, Claimant appeared to be manipulating this part of the examination because she had no unsteadiness when walking in place. Dr. Fayyazi reported that Claimant's lumbar extension was 50% of normal, which was reasonable given her body size and age. Claimant complained of discomfort with palpation of the lumbar spine, at the right posterior superior iliac spine, and on the lateral aspect of the right hip running down the leg, consistent with bursitis. Overall, Dr. Fayyazi found Claimant's examination to be relatively benign. Dr. Fayyazi reviewed Claimant's medical records including the lumbar spine MRI and found nothing to show trauma was creating the findings at L5-S1. Dr. Fayyazi opined that Claimant sustained a lumbar strain and sprain from which she has fully recovered.

5

He did not offer an opinion regarding the concussion because it was outside the scope of his practice. F.F. No. 2(a)-(d).

Notably, Dr. Fayyazi opined that if Claimant had no back complaints prior to the September 7, 2019 injury, she may have aggravated her preexisting chronic isthmic spondylolisthesis and neural proximal stenosis resulting in lower extremity symptoms. Assuming that Claimant was completely asymptomatic prior to the work incident, Dr. Fayyazi would opine that Claimant had reached maximum medical improvement rather than fully recovered. F.F. No. 2(d).

Employer's second medical witness, Dr. DeSouza, a board-certified neurologist, conducted an IME of Claimant on January 3, 2020, for her September 7, 2019 work-related injury. Dr. DeSouza testified that Claimant reported her initial and follow up treatment in a detailed fashion, noting that she had a good, clear memory, which showed how well her brain was working. Claimant complained of headaches in the back of her head, which she rated at 7/10, dizziness, and nausea with blurred vision. Claimant also reported back pain and leg pain one to two times per week. Dr. DeSouza's physical examination of Claimant revealed no positive findings. Dr. DeSouza testified that the EMG revealed no evidence of radiculopathy or plexopathy. The brain MRI was normal. Dr. DeSouza opined that Claimant may have had post-traumatic headaches from when she fell backwards and hit her head, but there was no evidence of concussion or post-concussion syndrome. He remarked that both his evaluation and that of Dr. Weinstein were normal for cognition, memory, attention, mood, cranial nerves, and gait. Dr. DeSouza opined that Claimant was fully recovered from her post-traumatic headaches. F.F. No. 3(a)-(e).

The WCJ found Claimant less than credible. The WCJ explained that Claimant did not disclose her 2016 fall from a ladder resulting in low back pain to

6

three of the medical experts in this matter. Claimant also complained about body parts and symptoms, such as shoulder pain, about which none of her experts testified. The WCJ also noted that Claimant's description of a forehead injury was not consistent with the mechanism of a backwards fall. F.F. No. 8.

As for the medical testimony, the WCJ found

> Dr. Fayyazi's opinion of full recovery of the accepted injuries more competent and credible than the opinions of Dr. Diamond based on the benign examination findings and lack of relevant findings on objective studies. As for Dr. Fayyazi's potential expansion of Claimant's injury, he stated that would be so *only if Claimant had no prior back complaints, which according to her testimony was not the case*. Both Dr. DeSouza and Dr. Weinstein reported normal neurological examinations supporting no ongoing post-traumatic headache[s], and no finding of concussion or concussion sequelae. Based on the lack of findings in both examinations, Dr. DeSouza's opinions are accepted.

F.F. No. 7 (emphasis added).

Ultimately, the WCJ found that Claimant had recovered from her lumbar sprain and strain as of November 20, 2019, and from her post-traumatic headaches as of January 3, 2020. F.F. Nos. 9-10. The WCJ further found that Claimant sustained no additional injuries as a result of her September 7, 2019 work-related injury. F.F. No. 11.

Accordingly, the WCJ concluded that Employer met its burden of proving that Claimant had fully recovered from her accepted work-related injuries sustained as a result of the September 7, 2019 incident. The WCJ concluded that Claimant failed to meet her burden of proving that she sustained any additional work-related injuries or that Employer violated the Act. Thus, the WCJ granted Employer's Termination Petition and denied Claimant's Review and Penalty Petitions.

7

Claimant appealed the WCJ's decision to the Board, which affirmed. Claimant now petitions this Court for review.[2]

## II. Issue

Claimant argues that the WCJ erred or abused his discretion by denying her Review Petition and granting Employer's Termination Petition by misconstruing Employer's expert evidence. According to Claimant, Dr. Fayyazi testified that, *if Claimant did not have any prior lower extremity symptoms* before the work incident, the work-related injury should be expanded to include a work-related aggravation of isthmic spondylolisthesis, which has not fully resolved. However, the WCJ misconstrued Dr. Fayyazi's testimony by finding that the doctor would support an expansion of the injury description only if Claimant did not have *any prior lower back pain*. The assessment of whether Claimant sustained a work-related aggravation hinged on the presence or absence of prior lower extremity symptoms, not simply lower back pain, as found by the WCJ. Although Claimant admitted to occasional lower back pain prior to the work injury, she did not have any prior symptoms. Claimant contends that Dr. Fayyazi's testimony, if properly construed, supports an expansion of the accepted work injury.

## III. Discussion

It is well settled that, in workers' compensation cases, "[t]he WCJ is the ultimate finder of fact, and the exclusive arbiter of credibility and evidentiary

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

8

weight." *LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 754 A.2d 666, 676 (Pa. 2000). In executing his factfinding role, "the WCJ is free to accept or reject, in whole or in part, the testimony of any witness." *Id.* Determinations as to witness credibility and evidentiary weight are generally not subject to appellate review. *Joy Global, Inc. v. Workers' Compensation Appeal Board (Hogue)*, 876 A.2d 1098, 1103 (Pa. Cmwlth. 2005).

However, the WCJ's evidentiary findings are not immune from review. *LTV Steel,* 754 A.2d at 676. "The WCJ must base [his] decision on substantial evidence." *Id.* "Substantial evidence" is such

> relevant evidence that a reasonable person might accept as adequate to support a conclusion. In reviewing a decision for substantial evidence, the court must view the evidence in the light most favorable to the party [that] prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party. . . . [I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.

*Pocono Mountain School District v. Workers' Compensation Appeal Board (Easterling)*, 113 A.3d 909, 918 (Pa. Cmwlth. 2015) (internal citations and quotations omitted).

With a review petition, the burden is on the claimant to establish the existence of additional compensable injuries. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009). Conversely, in a termination petition proceeding, it is the employer that bears the burden of proving that the claimant has fully recovered from the work injury. *Jones v. Workers' Compensation Appeal Board (J.C. Penney Co.)*, 747 A.2d 430, 432 (Pa. Cmwlth. 2000). An employer can meet this burden by "proving either that the

9

employee's disability has ceased, or that any current disability arises from a cause unrelated to the [claimant's] work injury." *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). Where the claimant complains of ongoing pain, there must be unequivocal medical evidence, offered within a reasonable degree of medical certainty, that "the claimant is fully recovered[ and] can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Here, the WCJ found:

> Dr. Fayyazi opined that if Claimant *had no back complaints prior to the September 7, 2019 injury*, she may have aggravated her pre-existing chronic isthmic spondylolisthesis and neural proximal stenosis resulting in lower extremity symptoms. *Assuming Claimant was completely asymptomatic prior to the injury*, he would say Claimant had reached maximum medical improvement rather than saying she was fully recovered.

F.F. No. 2(d) (emphasis added). In addition, the WCJ found: "As for Dr. Fayyazi's potential expansion of Claimant's injury, he stated that would be so only if Claimant had no prior back complaints, which according to her testimony was not the case." F.F. No. 7.

Dr. Fayyazi testified that, based on his review of her MRI, Claimant suffered from "chronic isthmic spondylolisthesis and neural foraminal stenosis." Reproduced Record (R.R.) at 92a. He opined, "assuming that she was asymptomatic with respect to her back and lower extremity, that her September [7, 2019] injury may have aggravated that condition and had resulted in her lower extremity

10

symptoms." *Id*. Dr. Fayyazi stated that he "would need to confirm that she was not symptomatic . . . prior to the injury." *Id*. at 93a.

On cross-examination, Dr. Fayyazi explained:

> *If she had lower extremity symptoms prior to this fall*, then the lower extremity symptoms at this time would not be related to the fall. If those symptoms were not present before the fall, then the fall resulted in aggravation of the spondylolisthesis or isthmic spondylolisthesis.

R.R. at 110a-11a (emphasis added). He reiterated "*if she was asymptomatic before the fall*, then the injury resulted in an aggravation of the isthmic spondylolisthesis." *Id*. at 112a (emphasis added).

Upon review, the WCJ did not misconstrue Dr. Fayyazi's testimony. Dr. Fayyazi's potential expansion of Claimant's work injury to include injuries beyond a lumbar sprain and strain, namely an aggravation of isthmic spondylolisthesis and neural foraminal stenosis, was dependent on whether Claimant had no prior back complaints or symptoms. R.R. at 92a, 112a. Dr. Fayyazi testified that low back pain is a symptom of isthmic spondylolisthesis and neural foraminal stenosis. *Id*. at 103a-04a.

Claimant admitted that she had "some back issues" before the 2019 work incident. R.R. at 49a. Claimant explained that she fell off a ladder at work in 2016, and she reported the incident to Employer. *Id*. at 49a-50a, 58a-59a. Although Claimant denied requiring medical attention for the 2016 ladder fall, she admitted to experiencing backaches. *Id*. at 50a. Claimant was not sure if her pre-injury back pain was attributable to the 2016 ladder fall or from being on her feet at work for long periods of time. *See id*. at 50a, 64a. Claimant testified that her low back pain intensified after the 2019 injury. *Id*. at 64a. By admitting that she had back symptoms prior to the 2019 incident, Claimant negated the condition imposed by

11

Dr. Fayyazi for his testimony to support the expansion of the work injury to include an aggravation of her underlying conditions.  Consequently, Dr. Fayyazi's testimony does not support an expansion of Claimant's injury description.  Because the WCJ rejected Claimant's medical evidence, F.F. No. 7, Claimant did not satisfy her burden of proving the existence of additional compensable injuries.  We, therefore, conclude that the WCJ did not err or abuse his discretion by denying her Review Petition.

As for the Termination Petition, Employer's medical experts both credibly testified that Claimant had fully recovered from the accepted work-related injuries -- lumbar strain and sprain and post-traumatic headaches -- and could return to work without restrictions.  F.F. No. 7; R.R. at 91a, 93a; Certified Record (C.R.) at 408.[3]  Specifically, Dr. Fayyazi testified that Claimant was fully recovered from the accepted lumbar strain and sprain injury.  R.R. at 91a, 93a.  Dr. DeSouza credibly testified that Claimant was fully recovered from her post-traumatic headaches and released her to her pre-injury job without restrictions.  C.R. at 408.  Although Claimant presented conflicting medical testimony that she was not fully recovered from her work injury, the WCJ rejected the opinions of Drs. Diamond and Weinstein as not credible.  F.F. No. 7.  Although Dr. Fayyazi testified that Claimant has not fully recovered from the isthmic spondylolisthesis, R.R. at 115a-16a, this injury was not accepted as a compensable work injury.  Upon review, the WCJ's finding that Claimant was fully recovered from her accepted work injuries is supported by substantial evidence.  We, therefore, conclude that the WCJ did not err or abuse his discretion by granting Employer's Termination Petition.

_____

[3] Because the Certified Record was filed electronically and was not paginated, the page numbers referenced in this opinion reflect electronic pagination.

## IV. Conclusion

Upon review, we affirm the Board's order affirming the WCJ's decision.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carmel G. Jean,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             :  No. 74 C.D. 2022
                                         :
Bloomin' Brands, Inc. (Workers'          :
Compensation Appeal Board),              :
                                         :
                    Respondent           :

# **O R D E R**

AND NOW, this 25th day of September, 2023, the order of the Workers'

Compensation Appeal Board, dated December 29, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge