IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan Mills,                                        :  **CASES CONSOLIDATED**
                                                   :
                              Petitioner           :
                                                   :
            v.                                     :  Nos. 393 C.D. 2023
                                                   :        394 C.D. 2023
                                                   :
                                                   :  Submitted:  July 5, 2024
Ken-Crest Services (Workers'                       :
Compensation Appeal Board),                        :
                                                   :
                              Respondent           :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  December 27, 2024


            Ryan Mills (Mills) petitions for review from two decisions and orders
of the Workers' Compensation Appeal Board (Board), affirming two identical
decisions and orders of Workers' Compensation Judge Audrey Beach (WCJ) that
granted two termination petitions filed by Ken-Crest Services (Employer) under the
Workers' Compensation Act (Act).[1]  For the reasons that follow, we affirm.

            Mills worked for Employer, who provides services to individuals with
physical and mental disabilities.  Mills' job duties required her to bathe, dress, feed,

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

and clean for clients as well as transport them to appointments. WCJ's Opinion, 8/16/22, Finding of Fact (F.F.) No. 4.[2]

On August 25, 2020, WCJ Scott Olin (WCJ Olin) issued a decision and order ruling that Mills suffered a work-related neck injury in an automobile accident that occurred on April 17, 2019.[3] WCJ Olin further held that Mills suffered a work-related left shoulder injury and aggravation of a preexisting neck condition on June 24, 2019, when she was attacked by a client who was experiencing a manic episode. WCJ Olin directed Employer to pay Mills total disability benefits from April 18, 2019, through June 9, 2019, subject to a credit for unemployment compensation benefits that Mills received during that time. Mills' benefits were suspended as of June 10, 2019. WCJ Olin also directed Employer to pay Mills total disability benefits from June 25, 2019, again subject to a credit for unemployment compensation benefits Mills received. WCJ's Opinion, F.F. No. 1.

On April 28, 2021, Employer filed the termination petitions, alleging that Mills had, as of February 25, 2021, fully recovered from her work-related injuries of April 17, 2019, and June 24, 2019.[4] Mills denied the allegations of the termination petitions and the matter was assigned to the WCJ.

In support of its termination petitions, Employer presented the deposition testimony of Scott Rushton, M.D. Dr. Rushton is board certified in

---

[2] The WCJ's opinion and order can be found on page 243 of Mills' Reproduced Record (R.R.). We note that the Reproduced Record is not properly numbered as directed in Pa.R.A.P. 2173 (reproduced record shall be numbered separately in Arabic figures followed by a small "a"). For convenience, we will refer to the Reproduced Record as paginated by Mills.

[3] WCJ Olin's opinion and order can be found on page 138 of the Reproduced Record.

[4] In addition, Mills filed two penalty petitions alleging that Employer failed to pay her reasonable, necessary, and related medical expenses. The WCJ denied the penalty petitions and Mills did not challenge the denial on appeal.

2

orthopedic surgery with a subspecialty and fellowship in orthopedic spine surgery. Dr. Rushton testified that he performs 300 surgeries in any given year, all of them on the spine. WCJ's Opinion, F.F. No. 5.

Dr. Rushton examined Mills on February 25, 2021. At that time, he procured a medical and employment history from Mills, including a description of her work-related injuries and subsequent medical treatment. Dr. Rushton also reviewed various medical records related to Mills' prior medical treatment, including diagnostic and test results. At the time of Dr. Rushton's evaluation, Mills was not working, and she related that she had not worked since June 24, 2019. WCJ's Opinion, F.F. No. 5.

On the day of Dr. Rushton's examination, Mills' complaints included low back pain, left shoulder pain, and a "tertiary symptom of neck pain." WCJ's Opinion, F.F. No. 5. Mills denied any radiating or referred pain. Mills related to Dr. Rushton that she was a single mother of a 10-year-old daughter and that her present treatment included pain management. Mills indicated that she was unable to report to physical therapy because of childcare issues. Mills was taking pain pills and a muscle relaxer along with anti-inflammatory medication. Mills advised Dr. Rushton that she experienced "no benefit" from the treatment she had undergone. *Id.* Mills' symptoms remained static from the time of her injury to the date of Dr. Rushton's examination. Mills denied any prior problems related to her cervical or lumbar spine that predated January 20, 2019.[5] Mills indicated that she had a sitting tolerance of an hour and a standing tolerance of 30 minutes. Mills related that she

---

[5] The reference to January 20, 2019, appears to be a typographical error. On January **22**, 2019, Mills slipped and fell on a mat outside of Employer's work premises and suffered a work-related lumbar strain/sprain. Mills had a limited period of compensable wage loss. WCJ Olin suspended Mills' entitlement to weekly benefits for that injury as of February 20, 2019, when Mills returned to full-duty work. WCJ Olin's Opinion, 8/25/2020, at 11; Conclusion of Law No. 2.

3

experienced pain on a daily basis. On a scale of 1 to 10, Mills' pain during the day was at 6 out of 10 and in the evening was at 10 out of 10. *Id.*

Dr. Rushton's physical examination found Mills to be 5 feet, 3 inches in height and weighing 231 pounds. Mills had a non-antalgic gait and was not using a device for ambulation. Mills demonstrated a full and painless range of motion of her cervical spine as well as full and painless ranges of motion in her shoulders bilaterally. There was no pain reproduced with range of motion testing. WCJ's Opinion, F.F. No. 5.

Neurologically, Mills was completely normal. Provocative testing in Mills' upper extremities was unremarkable and there were no examination findings supporting a diagnosis of cervical radiculopathy. From a lumbar spine standpoint, Mills was able to heel to toe walk and was able to achieve a 60-degree hip flexion on both sides when performing a single leg stance. Mills was also able to maintain that position against resistance. Meanwhile, neurologic testing of Mills' lower extremities bilaterally demonstrated neurologic preservation over all muscle groups with no weakness appreciated. There was no evidence of any radiculopathy with provocative testing, which included a straight leg raise test and a seated leg raise test. There was also no evidence of upper motor neuron pathology at the time of Mills' upper and lower extremity examinations. "In essence, [Mills] had a 'completely normal problem-focused examination of her cervical and lumbar spine.'" WCJ's Opinion, F.F. No. 5.

Dr. Rushton reviewed reports from Mills' May 16, 2019, and February 10, 2021, cervical Magnetic Resonance Imaging (MRI) tests. He did not review the actual studies. The May 16, 2019, MRI revealed multiple levels of abnormalities, including in the cervical and thoracic spines. There were abnormalities over "each

4

and every motion segment." WCJ's Opinion, F.F. No. 5. At C2-3 there was a disc protrusion to the left; at C3-4 there was a disc protrusion to the left; at C4-5 there was a midline disc protrusion with disc degeneration; at C5-6 there was a broad disc protrusion; at C6-7 there was disc degeneration with a broad disc protrusion to the left compromising the left neural foramen; and there was a reported subligamentous extension and disc protrusion toward the left at C7 and T1. The report of the May 16, 2019, MRI also identified a reversal of the normal lordosis and disc degeneration with disc protrusions to the right at T3 and T4. *Id.*

Dr. Rushton then compared Mills' May 16, 2019, MRI results with the results of her February 10, 2021, MRI. Dr. Rushton found it significant that the February 2021 scans were obtained at the same facility and were interpreted by the same radiologist, Dr. Joel Schwartz. Dr. Rushton determined there were "fairly distinct differences in the MRI findings with resolution of a number of the previously reported findings." Dr. Scott Rushton Deposition, 8/10/21, R.R. at 179. In the updated MRI report, Dr. Schwartz noted an eccentric disc protrusion to the left at C6-7 with altered cervical lordosis and "now a shallow disc protrusion to the right at C4-5 and C5, C6" as well as a "subligamentous extension at C6-7." WCJ's Opinion, F.F. No. 5.

Dr. Rushton also reviewed WCJ Olin's decision and order, specifically WCJ Olin's judicially determined descriptions of Mills' work-related injuries on April 17, 2019, and June 24, 2019. Dr. Rushton formed the overall medical conclusion that, as of February 25, 2021, Mills was fully recovered from her work-related injuries which included cervical spine sprain and strain, aggravation of preexisting cervical pathology and cervical radiculopathy as well as cervical aggravation with radiculopathy. Dr. Rushton noted that Mills did not complain of

any clinically relevant cervical radiculopathy at the time of the February 25, 2021, evaluation and, in fact, Mills' primary complaint was low back pain. Mills' secondary and tertiary complaints were left shoulder and neck pain. Further, Mills' examination results were completely normal with full ranges of motion to the cervical spine without pain. Mills did not manifest any signs consistent with cervical radiculopathy and there was no evidence of muscle loss or reflex changes. Additionally, based on the time that had passed between Mills' work-related injuries and the date of Dr. Rushton's examination, Dr. Rushton opined there was "ample and appropriate" time for Mills to experience full recovery from her injuries. WCJ's Opinion, F.F. No. 5.

Dr. Rushton concluded that Mills was capable of performing her pre-injury job duties without restrictions. Moreover, he did not believe that Mills was a candidate for surgical spine surgery because of the normal examination findings and "the lack of surgical findings in [Mills'] MRI results." WCJ's Opinion, F.F. No. 5. It was Dr. Rushton's opinion that Mills did not require any further medical treatment for her April 17, 2019, and June 24, 2019, work-related injuries. *Id.*

On cross-examination, Dr. Rushton agreed that Mills' MRI studies described abnormal degenerative changes. He also agreed that degenerative changes could be a source of pain and are typically age-related and thus not reversible. Dr. Rushton also indicated that degenerative changes could be materially aggravated or accelerated by trauma. Dr. Rushton admitted that he did not review any medical records that predated Mills' April 17, 2019, work injury and documented complaints of neck pain. Finally, Dr. Rushton admitted that an August 13, 2019, electromyography (EMG)/nerve conduction study performed on Mills reported a left C6-7 radiculopathy, which was abnormal. WCJ's Opinion, F.F. No. 5.

6

On redirect examination, Dr. Rushton reiterated that Mills' examination results were completely normal with painless ranges of motion which excluded by default any spasm, tenderness, or restrictions. There was no clinical evidence of ongoing C6-7 radiculopathy "whatsoever." WCJ's Opinion, F.F. No. 5.

Dr. Rushton also authored a January 7, 2022, addendum report (addendum report) following his receipt and review of additional medical records following Mills' December 3, 2021, neck surgery. The addendum report reflected that Dr. Rushton's prior opinions and diagnoses remained unchanged. Dr. Rushton opined that Mills' December 3, 2021, surgical procedure constituted unreasonable and/or unnecessary treatment and was unrelated to Mills' work-related diagnoses. WCJ's Opinion, F.F. No. 6.

Employer also submitted surveillance evidence relating to Mills' activities on May 21, 2021, and May 23, 2021. Mills was observed walking with papers, getting into a car, and "carrying a small purse with a strap between her neck and left shoulder diagonally across the left side of [her] neck." WCJ's Opinion, F.F. No. 8.

Mills presented the deposition testimony of Theresa Pazionis, M.D. Dr. Pazionis is board certified in orthopedic surgery and was serving as an assistant clinical professor of surgery at the Lewis Katz School of Medicine at Temple University. Dr. Pazionis testified that as part of her treatment of Mills, she reviewed both MRI images and MRI scan reports. WCJ's Opinion, F.F. No. 7.

Dr. Pazionis first examined Mills on August 12, 2021, and procured a medical and employment history including a description of Mills' work-related injuries and subsequent medical course. Mills' present complaints included left arm pain from the neck to the left arm in a "C-7 pattern." WCJ's Opinion, F.F. No. 7.

7

In other words, Mills had pain radiating from her arm into her middle two to three fingers. Mills reported that her pain was level 10 out of 10. Around 30% of Mills' pain was in her neck and the other 70% of her discomfort was in her left arm. Any neck function such as looking up or rotating her neck was painful and nothing relieved Mills' pain. Dr. Pazionis observed that Mills had an unsteady gait and difficulties with fine motor skills including penmanship and buttoning clothes. *Id.*

Mills demonstrated normal sensation in both upper and lower extremities and her reflexes were within normal limits. Mills was unable to heel to toe walk or perform one-leg standard tandem gait. Mills' radicular pain was not improved when she placed her hands above her head. Mills did not use assistive devices for ambulation but "there was pain that was elicited with activity involving an antalgic gait." WCJ's Opinion, F.F. No. 7. Dr. Pazionis testified that her inspection of Mills' neck was normal. Moreover, the remainder of Mills' physical examination was fairly normal. *Id.*

Dr. Pazionis also reviewed Mills' imaging studies including x-rays of Mills' cervical spine and an MRI of her cervical spine. Dr. Theresa Pazionis Deposition, 12/14/2021, R.R. at 95. With regard to the MRI, Dr. Pazionis testified that Mills' symptoms were "somewhat discordant from [the] MRI." *Id.* at 97. Furthermore, Dr. Pazionis thought that Mills "was a little bit worse than expected given the MRI" so she had the MRI repeated. *Id.* The subsequent MRI was similar to the prior MRI. *Id.*, R.R. at 98. Mills' C6-7 seemed to be the main level of pathology. *Id.*

On December 3, 2021, Dr. Pazionis performed surgery on Mills in the nature of a C6-7 anterior cervical discectomy and fusion "with use of allograft and autograft as well as a left modified radical neck dissection for access to the cervical

spine." WCJ's Opinion, F.F. No. 7. Dr. Pazionis indicated that during the surgery, she visualized a herniated disc centrally at the C6-7 level that was "concordant to what we had seen on the MRI." *Id.*

Dr. Pazionis indicated that Mills had a difficult postoperative course and still complained of the same symptoms she presented with prior to surgery. Specifically, Mills had ongoing surgical radicular pain in the left upper extremity and was hypertensive. WCJ's Opinion, F.F. No. 7. Dr. Pazionis stated: "I also performed an MRI for her postoperatively given that I didn't feel her symptoms had, you know, relieved themselves to the point that I would have expected given the compression." Dr. Theresa Pazionis Deposition, R.R. at 103. Dr. Pazionis reviewed the updated MRI results and testified that there was no significant canal or foraminal stenosis such that Mills had been "adequately decompressed." WCJ's Opinion, F.F. No. 7.

Dr. Pazionis also testified that she reviewed Dr. Rushton's report. When asked how her physical examination of Mills compared to Dr. Rushton's, she stated:

> [Dr. Rushton] didn't note anything about her sensation, and I agree with him that she does have five out of five strength bilaterally in the upper and lower extremities. I agree about her height and weight. Perhaps she wasn't in pain that day. [Dr. Rushton] notes that her gait is non-antalgic. That's not what I found but that's why it's different.
>
> Her shoulder range of motion was not painless. She was having quite significant pain when I examined her . . . .

Dr. Theresa Pazionis Deposition, R.R. at 105-06.

Dr. Pazionis diagnosed Mills with a C6-7 herniated nucleus pulposus associated with left upper extremity radiculopathy. Dr. Pazionis believed these

9

diagnoses were consistent with what was "reported and judicially determined to be the work injury." WCJ's Opinion, F.F. No. 7. She did not believe that Mills had fully recovered from the work-related injuries and, additionally, that the December 3, 2021, surgery was "medically necessary." *Id.* Finally, Dr. Pazionis did not believe that Mills was capable of performing her pre-injury job duties. *Id.*

Mills testified on her own behalf on January 19, 2022. She confirmed that she underwent neck surgery on December 3, 2021, and indicated that she was improving daily. Mills was no longer experiencing pain in her fingers, although she still suffered from neck pain. At the time of her testimony, Mills was taking Percocet five times daily. WCJ's Opinion, F.F. No. 9.

The WCJ found that to the extent Mills' testimony could be construed as demonstrating that she continued to experience ongoing symptoms and disability referable to her April 17, 2019, and June 24, 2019, work injuries, her testimony was rejected as not credible and persuasive because:

1) [Mills] complained to Dr. Rushton that her primary symptoms were located in her low back. [WCJ] Olin determined that [Mills] fully recovered from her work-related low back injury as of December 12, 2019;

2) Both Dr. Rushton and Dr. Pazionis detected no decrease in [Mills'] upper extremity strength bilaterally and [Mills'] reflexes were intact and symmetrical;

3) The injections . . . [Mills] underwent were to her shoulder joint, not her neck. [WCJ] Olin determined that [Mills] fully recovered from her left shoulder sprain as of December 12, 2019;

4) Upon examination by Dr. Pazionis, [Mills] purportedly had an unsteady gait, limped and was unable to heel to toe walk. Dr. Pazionis failed to adequately explain how neck pain would cause an altered gait;

10

5) Neither of [Mills'] cervical MRIs revealed any cord compression, yet that was the medical justification for the December 3, 2021 surgery performed by Dr. Pazionis;

6) The C6-7 protrusion was central, not left-sided. [Mills'] subjective symptoms were to the left side of her neck and her left upper extremity;

7) [Mills] appeared to walk without any impediment as depicted in surveillance evidence, carrying a small purse by wrapping the strap between the left side of her neck and her left shoulder. This was inconsistent with [Mills'] testimony that her pain level was a 6 out of 10 or a 10 out of 10;

8) [Mills] testified before [the WCJ] that her symptoms had improved post[-]surgically. Dr. Pazionis testified that [Mills] complained of the same symptoms postoperatively as she did preoperatively;

9) The testimony and opinions of Dr. Rushton are more credible, persuasive, consistent with [Mills'] MRI results showing no compression, consistent with the relative ease with which [Mills] moved in the surveillance footage, and consistent [with Mills'] normal strength and reflexes as testified to by [Dr.] Pazionis and Dr. Rushton.

WCJ's Opinion, F.F. Nos. 11(1)-(9).

The WCJ also rejected Dr. Pazionis' testimony in its entirety, stating:

1) Dr. Pazionis testified that the reason for the December 3, 2021, surgery was because of cord compression at C6-7. Neither of the MRIs revealed any cord compression;

2) This [WCJ] has determined that [Mills'] testimony is unworthy of belief. The testimony of Dr. Pazionis therefore can rise no higher than that of [Mills.]

11

WCJ's Opinion at F.F. No. 12(1)-(2). The WCJ further rejected Dr. Pazionis' testimony because upon examination by both Drs. Rushton and Pazionis, Mills had no decreased strength in her upper extremities and her reflexes were intact and symmetrical; Mills' primary complaint when she presented to Dr. Rushton was low back discomfort, not neck or left upper extremity discomfort; upon examination by Dr. Rushton, Mills had not suffered muscle loss, did not have positive radicular findings and no motor neuron findings; Dr. Pazionis' testimony that Mills was unable to heel to toe walk and had an altered gait was not medically associated with neck and/or left upper extremity symptoms; Mills testified that her symptoms improved post-surgically while Dr. Pazionis testified that Mills' symptoms persisted after surgery; while Mills complained of a 10 out of 10 pain level, she moved easily without any signs of discomfort when she was under surveillance; and finally, because Dr. Rushton's testimony and opinions were more credible, persuasive, and consistent with Mills' MRI results as well as Mills' "unfettered activities as set forth in the surveillance evidence." WCJ's Opinion, F.F. No. 12(3)-(10).

Thus, the WCJ determined that Mills had fully recovered from her work-related injuries of April 17, 2019, and June 24, 2019, and granted Employer's termination petitions. Mills appealed and the Board affirmed. Mills now appeals to this Court.[6, 7]

---

[6] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

[7] On May 26, 2023, this Court *sua sponte* issued an order consolidating Mills' appeals.

At the outset, we are mindful that in workers' compensation cases, "the WCJ is the ultimate factfinder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness' testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). "While this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Furthermore, in a substantial evidence analysis where, as here, both parties presented evidence, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). This Court's authority is limited to reviewing the entire record to see if it contains evidence that a reasonable person might find sufficient to support the WCJ's findings. *Department of Corrections-SCI Chester v. Faison (Workers' Compensation Appeal Board)*, 266 A.3d 714, 736 (Pa. Cmwlth. 2021). If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.*

This Court "may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently

13

trustworthy evidence." *Faison*, 266 A.3d at 736 (quoting *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004)). Finally, we must review the evidence in the light most favorable to the prevailing party. *Cochenour*, 251 A.3d at 475.

In a termination petition proceeding, it is the employer that bears the burden of proving that the claimant has fully recovered from the work injury. *Jones v. Workers' Compensation Appeal Board (J.C. Penney Co.)*, 747 A.2d 430, 432 (Pa. Cmwlth. 2000). An employer can meet this burden by "proving either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the [claimant's] work injury." *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). Where the claimant complains of ongoing pain, there must be unequivocal medical evidence, offered within a reasonable degree of medical certainty, that "the claimant is fully recovered[ and] can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Before this Court, Mills argues that the WCJ's decision is "erroneous as a matter of law" because "the WCJ did not understand [Mills'] diagnosis and drew an unsupported inference from testimony by [Mills] that her condition improved post-surgically." Mills' Brief at 2. In this regard, Mills notes that WCJ Olin's prior opinion found that as a result of the April 17, 2019, and June 24, 2019, work injuries, she suffered, among other things, *cervical radiculopathy*. Mills asserts that despite the prior finding of cervical radiculopathy, the WCJ in the instant proceedings

14

rejected Mills' testimony that she continued to experience ongoing symptoms and disability referrable to the work injuries on the basis that "[n]either of [Mills'] cervical MRIs revealed any *cord compression*, yet that was the medical justification for the December 3, 2021 surgery performed by Dr. Pazionis[.]" WCJ's Opinion, F.F. No. 11(5) (emphasis supplied). Mills points out that, to the contrary, Dr. Pazionis did not testify that cord compression was the reason for her surgery; rather, Dr. Pazionis had diagnosed Mills with a "C6-7 herniated nucleus polyposis, or herniated disc, associated with left upper extremity radiculopathy." Mills' Brief at 8 (quoting Dr. Theresa Pazionis Deposition, R.R. at 107).

Mills also challenges the WCJ's rejection of her testimony because it conflicted with Dr. Pazionis' testimony. Mills notes that the WCJ found that "[Mills] testified . . . that her symptoms had improved post[-]surgically" but "Dr. Pazionis testified that [Mills] complained of the same symptoms postoperatively as she did preoperatively." WCJ's Opinion, F.F. No. 11(8). Mills argues that this finding is in error, emphasizing that Dr. Pazionis' deposition was taken 11 days after her surgery while Mills' testimony occurred 5 weeks *after* Dr. Pazionis' deposition. Mills maintains that it is illogical to find a conflict as the aforementioned testimony reflects that she was in pain in the days after her surgery, but her pain improved as the weeks went on.

Citing the case of *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14 (Pa. Cmwlth. 1998), Mills maintains that the inconsistencies in the WCJ's opinion render her credibility determinations so flawed that they are irrational and must be overturned. In turn, Mills asks that we reverse the Board's determinations.

15

In response, Employer contends that Mills' appeal is nothing more than an improper challenge to the WCJ's credibility determinations. Employer notes that in this case, the WCJ offered detailed findings as to each witness and set forth the bases for her credibility determinations. Employer emphasizes that the WCJ rejected Mills' testimony as to ongoing symptoms and disability as incredible. That credibility determination necessarily impacted the credibility of Mills' medical witness, Dr. Pazionis. Per Employer, there is no indication in the record that the WCJ misunderstood Mills' diagnoses. To the contrary, "[t]he WCJ fully understood [Mills'] recognized work-related diagnoses, complaints, symptoms and physical examinations." Employer's Brief at 14. The WCJ simply did not find Mills or her medical expert credible.

We agree with Employer. It is readily apparent that in this case, the WCJ painstakingly reviewed all of the testimony and evidence presented, set forth a detailed discussion of each witness' testimony, and provided numerous bases for reaching her credibility determinations. Indeed, with regard to Mills, the WCJ noted nine distinct reasons to reject her testimony as neither credible nor persuasive. With regard to Dr. Pazionis, the WCJ rejected her testimony for 10 separate reasons. Here, Mills disagrees with two of the many reasons that the WCJ provided for not accepting her evidence, arguing that one is inaccurate and that the other is illogical.

In *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006), the claimant challenged the two reasons a WCJ gave for discrediting his physician's testimony. This Court, however, explicitly "declin[ed] [the claimant's] invitation to dissect and analyze each of the WCJ's reasons for his credibility determination." *Id.* As the *Dorsey* Court noted, "[d]etermining the credibility of the witnesses is the quintessential

16

function of the [factfinder]." *Id.* (quoting *Kasper v. Workers' Compensation Appeal Board (Perloff Brothers)*, 769 A.2d 1243, 1246 (Pa. Cmwlth. 2001)). "It is not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components." *Id.* Importantly, as an appellate tribunal, we must view the WCJ's reasoning *as a whole* before we determine that a credibility determination must be overturned because it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts or is so otherwise flawed that it must be overturned. *West Penn*, 251 A.3d at 475.

Based on our review of the record, we cannot say the WCJ misapprehended facts to such an extent that her credibility determinations must be overturned. While Mills may be correct when she argues that the WCJ improperly found that the impetus for Dr. Pazionis' surgery was "cord compression" rather than "radiculopathy," that does not render the WCJ's credibility determination void.[8] Notwithstanding this perceived error, there is no question that Dr. Pazionis' testimony relied on Mills' *incredible* testimony. As the WCJ noted, "[t]his [WCJ] has determined that [Mills'] testimony is unworthy of belief. The testimony of Dr. Pazionis therefore can rise no higher than that of [Mills]." WCJ's Opinion, F.F. No. 12(2).

---

[8] Despite Mills' assertions, we note that Dr. Pazionis did testify that she "performed an MRI for [Mills] postoperatively given that [Dr. Pazionis] didn't feel [Mills'] symptoms had, you know, relieved themselves to the point that [Dr. Pazionis] would have expected given the *compression*." Dr. Theresa Pazionis Deposition, R.R. at 103 (emphasis supplied). Dr. Pazionis further stated that updated MRI results showed that Mills had been "adequately decompressed." *Id.*

Regardless, Dr. Rushton unequivocally and credibly testified that when he examined Mills there was no clinical evidence "whatsoever" of C6-7 *radiculopathy*. Dr. Scott Rushton Deposition, R.R. at 192. It was Dr. Rushton's testimony that the WCJ relied upon in finding that Mills had fully recovered from her work-related injuries.

17

Further, to the extent that the WCJ found Mills' testimony to be inconsistent with Dr Pazionis' testimony concerning Mills' post-operative symptoms, we conclude that one illogical finding does not dictate that a credibility determination should be overturned. Viewing the WCJ's opinion *as a whole*, we perceive no reason to take such drastic action. The WCJ provided numerous reasons for rejecting the testimony of Mills and her medical expert as not credible. Simply put, there is no indication in the record that the WCJ's credibility determinations were arbitrary and capricious, dependent on a misapprehension of material facts, or so otherwise flawed such that they need to be corrected. Because Employer, through the credible testimony of Dr. Rushton, met its burden of proving that Mills has fully recovered from the work injuries and could return to work without restrictions, the WCJ was correct in granting Employer's termination petitions.

Accordingly, the order of the Board is affirmed.


_____
MICHAEL H. WOJCIK, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan Mills,                              : **CASES CONSOLIDATED**
                                         :
                    Petitioner           :
                                         :
          v.                             : Nos. 393 C.D. 2023
                                         :       394 C.D. 2023
                                         :
                                         :
Ken-Crest Services (Workers'             :
Compensation Appeal Board),              :
                                         :
                    Respondent           :


# **O R D E R**


AND NOW, this 27th day of December, 2024, the March 28, 2023 orders of the Workers' Compensation Appeal Board are AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge